## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANSISCA ARIAS, CHERIE LYN
COWELL, PATRICIA KOSTAK, CRISTINA
LINDNER, JOHANA PENA, and RAVEN
VENTURA, on behalf of themselves and all
others similarly situated,

                                Plaintiffs,

      - against -

FAMILY FIRST FUNDING, LLC, GABRIEL
GILLEN, an Individual, NEUSA GILLEN, an
Individual, and SCOTT WEIKEL, an
Individual,

                          Defendants.

Civil Action No.

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

Plaintiffs Fransisca Arias, Cherie Lyn Cowell, Patricia Kostak, Cristina Lindner, Johana Pena, and Raven Ventura (collectively, the "plaintiffs") individually and on behalf of all others similarly situated, through their undersigned attorneys, the Law Offices of Mitchell Schley, LLC, for their Class and Collective Action Complaint against defendants Family First Funding, LLC (herein "FF"), Gabriel Gillen, Neusa Gillen, and Scott Weikel (collectively, the "defendants") allege upon actual knowledge as to themselves and, as to all other matters, allege upon information and belief, as follows:

### NATURE OF ACTION

1.    This class action arises out of the defendants' pervasive and repeated disregard of federal and New Jersey state labor laws during the course of the plaintiffs' employment as defendants' employees. Plaintiffs bring this action pursuant to the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.,* and the New Jersey Wage and Hour Law (the

"NJWHL"), N.J.S.A. §34:11-56a, *et seq.,* for defendants' failure to pay them all wages due. Plaintiffs seek damages on their own behalf and on behalf of all others similarly situated.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b). Plaintiffs' state law claims are interposed in accordance with the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Family First has numerous locations in Bergen, Morris, Passaic, and Sussex counties and elsewhere in New Jersey, where a substantial portion of the events giving rise to this action occurred.

4.      The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.      Plaintiff Fransisca Arias is a resident of New Jersey. She was employed as a processor from September 2018 to October 31, 2022.

6.      Plaintiff Cherie Lyn Cowell is a resident of New Jersey. She was employed as a processor from August 6, 2018 to April 28, 2022.

7.      Plaintiff Patricia Kostak is a resident of New Jersey. She was employed as a processor assistant from January 25, 2021 to May 6, 2022.

8.      Plaintiff Cristina Lindner is a resident of New Jersey. She was employed as a processor from May 18, 2018 to October 21, 2022.

9.      Plaintiff Johana Pena is a resident of New Jersey. She was employed as a processor from February 2020 to January 24, 2023.

10.    Plaintiff Raven Ventura is a resident of New Jersey. She was employed as a processor from May 2019 to December 2022.

11.    Unless otherwise indicated, all references herein to plaintiffs include those employees similarly situated.

12.    At all relevant times, plaintiffs have been employees engaged in commerce or the production of goods for commerce on behalf of FF, within the meaning of the FLSA.

13.    FF suffered or permitted plaintiffs during the above-referenced periods to work in exchange for wages. During these periods, and at all relevant times, plaintiffs and those similarly situated had an employment relationship with and were employees of, FF within the meaning of the FLSA, 29 U.S.C.§203(e)(1),(g) and the NJWHL, N.J.S.A. 34:11-56a1(f),(g) and (h).

14.    Plaintiffs have consented to be a party to the FLSA claims in this action pursuant to 29 U.S.C. §216(b). Their written consents are filed as **Exhibit A** to this Complaint.

15.    FF has been at all relevant times a New Jersey limited liability company and has been a direct mortgage lender with in-house mortgage processing and underwriting, with a corporate headquarters at 44 Washington Street, Suite 200, Toms River, New Jersey 08753.

16.    FF now has over 300 employees in some 25 offices and is licensed to lend in over 30 states.

17.    FF was founded in about 2012.

18.    According to its website, the Company motto of FF is "Treat everyone as Family" which "can be seen throughout the company's culture."

19.    FF has been at all relevant times an employer engaged in interstate commerce and/or the production of goods for commerce with a gross annual revenue in excess of $500,000, within the meaning of the FLSA, 29 U.S.C. §203(a), (d), (r) and (s)(1)(A).

- 3 -

20.     At all relevant times, FF employees have handled goods that have been moved in, or produced in commerce. FF has been at all relevant times an employer engaged in interstate commerce and/or production of goods for commerce with a gross annual revenue an excess of $500,000, within the meaning of the FLSA.

21.     FF has been at all relevant times an employer within the meaning of the FLSA.

22.     FF has been at all relevant times an employer within the meaning of the NJWHL. N.J.S.A. 34:11-56al(g).

23.     Defendant Gabriel Gillen ("G. Gillen") is a resident of New Jersey and has been at all relevant times a co-founder, co-owner, officer, and President of FF.

24.     The FF website bio of G. Gillen states, "Serving as President of Family First Funding, LLC, Gabe is very involved in the success and growth of the company and remains heavily involved in the "Day to Day."

25.     At all relevant times, G. Gillen has been heavily involved in the "Day-to-Day" of FF.

26.     G. Gillen now serves on the Board of Governors of the Mortgage Banking Association of New Jersey.

27.     At all relevant times, G. Gillen has had operational control and managerial authority with respect to all aspects of FF, including its employees.

28.     G. Gillen is engaged in the day-to-day supervision of FF, including its employees.

29.     G. Gillen is a final decision-maker with respect to the terms and conditions of employment of the employees, including plaintiffs.

30.     G. Gillen decides on hiring and firing and disciplinary action for the employees, including plaintiffs.

31.    G. Gillen decides rates of pay, calculation of pay, and methods of payment for the employees, including plaintiffs.

32.    G. Gillen decides the employee benefits for the employees, including plaintiffs.

33.    G. Gillen promulgates and enforces employment and labor relations policies and work rules for the employees, including plaintiffs.

34.    G. Gillen decides work assignments and work schedules for the employees, including plaintiffs.

35.    G. Gillen has control over and managerial authority with respect to work records, payroll records, time records, and payroll tax records for the employees, including plaintiffs.

36.    G. Gillen was involved and was a final decision-maker with respect to the decision to lay off the employees in 2022 and 2023, including plaintiffs.

37.    G. Gillen decided that FF would not pay overtime pay to plaintiffs, as alleged herein.

38.    G. Gillen authorized and issued correspondence and/or memoranda to plaintiffs regarding terms and conditions of employment.

39.    At all relevant times, G. Gillen has acted directly or indirectly in the interest of FF in relation to plaintiffs and those similarly situated, and has been an employer and/or joint employer of the plaintiffs and those similarly situated, within the meaning of the FLSA and the NJWHL.

40.    G. Gillen is personally, jointly, and severally liable for the violations of the FLSA and the NJWHL by FF.

41.     Defendant Neusa Gillen ("N. Gillen") is a resident of New Jersey and has been at all relevant times a co-founder, co-owner, officer, and Chief Operating Officer of FF. During the relevant period, she has also served as Chief Compliance Officer.

42.     At all relevant times, G. Gillen and N. Gillen have been married.

43.     The FF website bio of N. Gillen states, "As Chief Operations Officer, Neusa is connected to every one of the Company's Departments. She has spearheaded the company's Quality Control and Employee Training programs and is the overall "Mechanic" behind all systems improvement/enhancements." "Neusa is truly motivated by helping create a complaint environment that creates a smooth experience for not only borrowers and our referral partners, but also the Sales and Operations teams at Family First Funding, LLC."

44.     The above website bio portions of N. Gillen are truthful and accurate with respect to her involvement at FF.

45.     At all relevant times, N. Gillen has had operational control and managerial authority with respect to all aspects of FF, including its employees.

46.     N. Gillen is engaged in the day-to-day supervision of FF, including its employees.

47.     N. Gillen is a final decision-maker with respect to the terms and conditions of employment of the employees, including plaintiffs.

48.     N. Gillen decides on hiring and firing and disciplinary action for the employees, including plaintiffs.

49.     N. Gillen decides rates of pay, calculation of pay, and methods of payment for the employees, including plaintiffs.

50.     N. Gillen decides the employee benefits for the employees, including plaintiffs.

51.     N. Gillen promulgates and enforces employment and labor relations policies and work rules for the employees, including plaintiffs.

52.     N. Gillen decides work assignments and work schedules for the employees, including plaintiffs.

53.     N. Gillen has control over and managerial authority with respect to the work records, payroll records, time records, and payroll tax records for the employees, including plaintiffs.

54.     N. Gillen was involved and was a final decision-maker with respect to the decision to lay off the employees in 2022 and 2023, including plaintiffs.

55.     N. Gillen decided that FF would not pay overtime pay to plaintiffs, as alleged herein.

56.     N. Gillen authorized and issued correspondence and/or memoranda to plaintiffs regarding terms and conditions of employment.

57.     At all relevant times, N. Gillen has acted directly or indirectly in the interest of FF in relation to plaintiffs and those similarly situated, and has been an employer and/or joint employer of the plaintiffs and those similarly situated within the meaning of the FLSA and NJWHL.

58.     N. Gillen is personally, jointly, and severally liable for the violations of the FLSA and the NJWHL by FF.

59.     Defendant Scott Weikel ("Weikel") is a resident of New Jersey and was a co-founder, co-owner, officer, and CEO of FF until in or about July 2022.

60.     In or about July 2022, Weikel sold his interest in FF to G. Gillen and N. Gillen.

- 7 -

61.     All references herein to relevant times with respect to Weikel's involvement in the business and liability cover the period ending in or about July 2022.

62.     At all relevant times, Weikel had operational control and managerial authority with respect to all aspects of FF, including its employees.

63.     Weikel was engaged in the day-to-day supervision of FF, including its employees.

64.     Weikel was a final decision-maker with respect to the terms and conditions of employment of the employees, including plaintiffs.

65.     Weikel decided on hiring and firing and disciplinary action for the employees, including plaintiffs.

66.     Weikel decided rates of pay, calculation of pay, and methods of payment for the employees, including plaintiffs.

67.     Weikel decided the employee benefits for the employees, including plaintiffs.

68.     Weikel promulgated and enforced employment and labor relations policies and work rules for the employees, including plaintiffs.

69.     Weikel decided work assignments and work schedules for the employees, including plaintiffs.

70.     Weikel had control over and managerial authority with respect to the work records, payroll records, time records, and payroll tax records for the employees, including plaintiffs.

71.     Weikel was involved and was a final decision-maker with respect to the decision to lay off the employees in 2022.

72.     Weikel decided that FF would not pay overtime pay to plaintiffs, as alleged herein.

73.    Weikel authorized and issued correspondence and/or memoranda to plaintiffs regarding terms and conditions of employment.

74.    At all relevant times, until in or about July 2022, Weikel acted directly or indirectly in the interest of FF in relation to plaintiffs and those similarly situated, and has been an employer and/or joint employer of the plaintiffs and those similarly situated within the meaning of the FLSA and NJWHL.

75.    Weikel is personally, jointly and severally liable for the violations of the FLSA and the NJWHL by FF that occurred until in or about July 2022.

## COLLECTIVE ALLEGATIONS

76.    Plaintiffs bring the First Claim as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of themselves and those similarly situated employees, which shall include:

> **All persons who worked in New Jersey on processing of mortgages for Family First Funding, LLC, Gabriel Gillen, Neusa Gillen, and Scott Weikel, in the various parts of the process, including opening, disclosure, verification, processor, processor assistant, appraisal, underwriting, closing, and post-closing, at any time three years prior to the filing of this action through the entry of judgment in this action (the "FLSA Collective"), but excluding loan officers and members of supervision and management.**

77.    Defendants are liable under the FLSA for failing to properly compensate plaintiffs and failing to pay plaintiffs overtime pay at one-and-a-half times their regular hourly rate for all hours worked in excess of 40 hours in a workweek. There are likely over 40 similarly situated current and former employees of the defendants in New Jersey in the positions above who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to the defendants, are readily identifiable and can be

located through defendants' records that they are required to create and maintain pursuant to applicable federal and state law. Notice should be sent to the FSLA Collective pursuant to 29 U.S.C. § 216(b).

78.    Defendants knew at all relevant times that the FLSA required them to pay proper and full overtime wages in accordance with the law, but they chose not to do so.

79.    Defendants' violations of the FLSA described above have been knowing, intentional and willful, and, therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

## NEW JERSEY WAGE AND HOUR LAW CLASS ALLEGATIONS PURSUANT TO N.J.S.A. 34-11-56a25

80.    The NJWHL, N.J.S.A. 34:11-56a25, provides that "an employee shall be entitled to maintain the action for and on behalf of himself or other employees similarly situated …."

81.    The Second Claim alleging violations of the NJWHL by defendants is brought and is properly maintainable as a class action on behalf of plaintiffs and those similarly situated pursuant to N.J.S.A. 34:11-56a(25). This class is referred to herein as the "NJWHL Similarly Situated Class."

82.    The NJWHL Similarly Situated Class shall consist of:

**All persons who worked in New Jersey on processing of mortgages for Family First Funding, LLC, Gabriel Gillen, Neusa Gillen, and Scott Weikel, in the various positions of the process including opening, disclosure, verification, processor, processor assistant, appraisal, underwriting, closing, and post-closing, for the period prior to the filing of this action as permitted by the NJWHL through the entry of judgment in this action (the  "NJWHL Similarly Situated Class"), but excluding loan officers and members of supervision and management.**

83.    The NJWHL Similarly Situated Class is believed to consist of over 40 similarly situated current and former employees who have been victims of defendants' common policy and practice that violated their rights under the NJWHL by willfully denying them the proper and full overtime pay at the rate of one-and-one-half times their regular hourly wage rate for all hours worked in excess of 40 in a workweek.

84.    Defendants knew at all relevant times that the NJWHL required them to pay proper and full overtime wages in accordance with the law, but they chose not to do so.

85.    Defendants' violations of the NJWHL described above have been knowing, intentional and willful and has caused significant damage to the NJWHL Similarly Situated Class.

## RULE 23 CLASS ACTION ALLEGATIONS

86.    In addition to the NJWHL Similarly Situated Class, plaintiffs bring the Second Claim as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of:

> **All persons who worked in New Jersey on processing of mortgages for Family First Funding, LLC, Gabriel Gillen, Neusa Gillen, and Scott Weikel, in the various positions of the process including opening, disclosure, verification, processor, processor assistant, appraisal, underwriting, closing, and post-closing, for the period prior to the filing of this action as permitted by the NJWHL through the entry of judgment in this action (the "New Jersey Rule 23 Class"), but excluding loan officers and members of supervision and management.**

87.    The persons in the New Jersey Rule 23 Class are so numerous that the joinder of all members is impracticable.  The exact number of the New Jersey Rule 23 Class members is unknown to plaintiffs at this time but there are believed to be over 40 such persons. The identity of the New Jersey Rule 23 Class members is known to the defendants and is contained in the

employment records that the defendants are required to create and maintain pursuant to state and federal law.

88.     Plaintiffs' claims are typical of the claims of the other members of the New Jersey Rule 23 Class as plaintiffs and all other members of the New Jersey Rule 23 Class sustained damages arising out of defendants' conduct in violation of the New Jersey state laws complained of herein. The New Jersey Rule 23 Class members work, or have worked, for the defendants in New Jersey to process mortgage applications and were not paid overtime wages by the defendants and were subjected to the same employment policies. They have sustained similar types of damages as a result of defendants' failure to comply with the NJWHL and supporting regulations of the New Jersey Department of Labor and Workplace Development contained in the New Jersey Administrative Code (N.J.A.C.).

89.     Plaintiffs will fairly and adequately protect the interests of the members of the New Jersey Rule 23 Class and have retained counsel competent and experienced in complex class action litigation.

90.     Plaintiffs have no interests that are contrary to or in conflict with those of the other members of the New Jersey Rule 23 Class.

91.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

92.     Common questions of law and fact exist as to all members of the New Jersey Rule 23 Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the New Jersey Rule 23 Class are:

     a.     Whether the NJWHL and the supporting regulations were violated by defendants' acts as alleged herein;

b.     Whether defendants failed to pay overtime wages to plaintiffs and other New Jersey Rule 23 Class members for time worked in excess of 40 hours in a workweek, as required by the NJWHL, N.J.S.A. 34:11-56a4; N.J.A.C. 12:56-6.1-6.7; and

c.     Whether plaintiffs and the New Jersey Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

93.     Defendants have acted or have refused to act on grounds generally applicable to the New Jersey Rule 23 Class, thereby making appropriate relief with respect to the New Jersey Rule 23 Class as a whole.

94.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since damages suffered by individual New Jersey Rule 23 Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for plaintiffs and New Jersey Rule 23 Class members to individually seek redress for the wrongful conduct alleged. Individual class members lack the financial resources to conduct a thorough examination of defendants' compensation practices to prosecute vigorously a lawsuit against the defendants to recover such damages. Class litigation is superior because it will obviate the need for unduly duplicative litigation.

95.     The prosecution of separate actions by the individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of treatment of class members by defendants; (b) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interest of the other members not parties to the adjudications; and (c) the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate relief with respect to the class as a whole.

### FACTUAL ALLEGATIONS

96.    FF's business includes, among others, two basic divisions, sales and operations.

97.    FF employs loan officers to sell or originate mortgage loans to customers.

98.    After the loan is sold or originated, operations take over and goes through the various steps necessary to move from a mortgage application to a closing.

99.    The procedure is a pipeline which includes opening, disclosure, verification, processing, appraisal, underwriting, closing, and post-closing.

100.    The loan opener is responsible for the initial input of data required to open the mortgage loan application and initiating the necessary steps to begin the application process.

101.    The disclosure employee is responsible for providing the applicant with the necessary disclosures mandated by law along the mortgage process. This includes initial disclosures, loan estimates, redisclosure requirements, and closing disclosures.

102.    The verification employee is responsible for verifying loan documentation to ensure it is accurate and adheres to requirements and procedure.

103.    The mortgage processor and mortgage processor assistant process the mortgage loan application and prepare the loan paperwork for approval. They ensure that loan applications get to closing on time, and that the loan packages are complete.

104.    The appraisal employee handles the paperwork in connection with the appraisal of the property. This employee does not go to the properties themselves to perform the appraisal.

105.    The underwriter evaluates whether the loan application meets the necessary criteria for the approval of the loans. They review loan applications and supporting

documentation. The underwriter inputs information into a computer program called Encompass which automates underwriting approvals. Encompass is a cloud-based loan origination platform that allows underwriters and all members of the loan operations team to track loan files throughout the entire process from origination to closing.

106. The closing employee coordinates the closing schedule with the parties and title company and provides a settlement document and the complete closing package which the customer will sign at closing.

107. The post-closing employee makes sure that closed loan package is complete and ready to be sold to investors on the secondary mortgage market.

108. FF paid all employees in the jobs listed above and who make up the FLSA Collective, the NJWHL Similarly Situated Class, and the New Jersey Rule 23 Class on a semi-monthly salary basis which was the same amount regardless of the number of hours the employee worked in a workweek.

109. A workweek within the meaning of the FLSA and NJWHL is seven consecutive days. 29 C.F.R. 718.105; N.J.A.C. 12:56-5.4(a).

110. All of the post-loan origination jobs referenced above at FF are non-exempt within the meaning of the FLSA and NJWHL, which means that FF must pay these employees overtime pay at 1.5 times their regular hourly rate for all hours worked in excess of 40 hours in a workweek.

111. The "regular hourly rate "within the meaning of the FLSA and NJWHL includes regular incentives or productivity bonuses paid pursuant to a plan. 29 C.F.R. 778.108--778.110; N.J.A.C. 12:56-6.5.

112.    In addition to their salary, plaintiffs were paid a regular incentive or productivity bonus pursuant to a plan.

113.    For example, in addition to their salary, processors were paid during certain periods a bonus for the number of mortgage files they processed over a period of time.

114.    Plaintiffs regularly worked in excess of 40 hours in a workweek.

115.    Plaintiffs never received overtime pay at 1.5 times their regular hourly rate including incentive or productivity bonuses.

116.    Plaintiffs never received overtime pay even at 1.5 times their basic hourly rate without the inclusion of incentives or productivity bonuses.

117.    Whether or not employees are paid on a salary basis is not determinative of their entitlement to overtime pay under the FLSA and NJWHL.

118.    The mortgage business is highly competitive. Property buyers often apply to multiple mortgage companies and seek to close as quickly as possible, so plaintiffs experienced intense pressure from loan officers and management to move the loan steps and paperwork quickly to get to closing. As far as defendants were concerned, as salaried employees, plaintiffs were available to work at all times and without the need to pay them for overtime work in accordance with the FLSA and NJWHL.

119.    At FF the regular workday for plaintiffs was supposed to be typical business office hours of 9 a.m. to 5 p.m., Monday to Friday, and when hired that is the work schedule plaintiffs understood their agreed-upon salary was intended to cover.

120.    However, beyond 9 a.m. to 5 p.m., Monday to Friday, plaintiffs actually and routinely worked early mornings, evenings, late nights, and weekends to get the mortgage

applications processed rapidly and to respond to requests and demands of loan officers, customers, and management.

121.    Defendants knew that plaintiffs regularly worked in excess of 40 hours per workweek.

122.    Defendants' brazen disregard for the FLSA and NJWHL is further demonstrated by the waiver of wage rights defendants required plaintiffs to sign as a condition of employment after they were hired and had begun working.

123.    Defendants presented plaintiffs with a document to be signed which included the following:

> **Exemption from Overtime/Minimum Wages. Employee has reviewed the job descriptions concerning Employee's position and acknowledges, understands, and agrees that Employee is exempt from overtime payment requirements and shall not be entitled to overtime, minimum wage or similar payments under federal, state or other law.**

124.    It is unlawful to obtain from an employee a waiver of minimum wage and overtime wage rights contained in the FLSA and NJWHL, and such a waiver is unenforceable. *See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981); N.J.S.A. 34:11-4.7.

125.    Contrary to the employee acknowledgment contained in the above-referenced document, plaintiffs were not legally "exempt from overtime payment requirements" or "minimum wage."

126.    At all relevant times, plaintiffs commonly worked in excess of 40, 50, and 60 hours per workweek.

127.    For example, during the workweek beginning October 1 and ending on October 5, 2018, plaintiffs Arias, Cowell, and Lindner worked in excess of 40 hours and were not paid 1.5 times their regular hourly rate for each hour over 40.

128.    For example, during the workweek beginning October 7 and ending on October 11, 2019, plaintiffs Arias, Cowell, Lindner, and Ventura worked in excess of 40 hours and were not paid 1.5 times their regular hourly rate for each hour over 40.

129.    For example, during the workweek beginning October 5 and ending on October 9, 2020, plaintiffs Arias, Cowell, Lindner, Pena, and Ventura worked in excess of 40 hours and were not paid 1.5 times their regular hourly rate for each hour over 40.

130.    For example, during the workweek beginning October 4 and ending on October 8, 2021, plaintiffs Arias, Cowell, Lindner, Kostak, Pena, and Ventura worked in excess of 40 hours and were not paid 1.5 times their regular hourly rate for each hour over 40.

131.    For example, during the workweek beginning April 4 and ending on April 8, 2022, plaintiffs Arias, Cowell, Lindner, Kostak, Pena, and Ventura worked in excess of 40 hours and were not paid 1.5 times their regular hourly rate for each hour over 40.

132.    For example, during the workweek beginning January 9 and ending on January 13, 2023, plaintiff Pena worked in excess of 40 hours and was not paid 1.5 times her regular hourly rate for each hour over 40.

133.    At all relevant times, New Jersey law and the FLSA required defendants to post a notice advising its employees of their wage and hour rights at defendants' facilities in a conspicuous and accessible place. N.J.S.A. 34-11-56a21; N.J.S.A. 34:11-4.6(d); 29 C.F.R. 516.4.

134.    At all relevant times, defendants failed to post at its facilities the notice required by New Jersey law and the FLSA.

135.    At all relevant times, New Jersey law and the FLSA required that with respect to plaintiffs, defendants keep true and accurate records of the hours worked each day and each workweek, the regular hourly wage paid, and the basis upon which wages are paid. N.J.S.A. 34-11-56a20; N.J.A.C. 12-56-4.1.

136.    At all relevant times, defendants failed to record and maintain the information required by New Jersey law and the FLSA.

137.    The NJWHL requires employers to maintain employee work time records for six years. N.J.A.C. 12-56-4.4.

138.    At all relevant times, the NJWHL required that defendants with respect to plaintiffs use a work time-keeping system that produces a complete, true, and accurate record. N.J.A.C. 12-56.4.2

139.    At all relevant times, defendants failed to utilize a work time-keeping system required by the NJWHL for plaintiffs.

140.    New Jersey law requires that for non-exempt employees the pay statement or paystub that accompanies a paycheck include the total number of hours worked in a workweek and the rate of pay. N.J.S.A. 34:11-4.6.

141.    The pay statement or paystub defendants issued to plaintiffs did not include the information required by New Jersey law.

## FIRST CLAIM FOR RELIEF
## Fair Labor Standards Act
## Unpaid Wages and Overtime Pay

142.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

143.    At all relevant times, the plaintiffs and the FLSA Collective were employed by defendants within the meaning of the FLSA.

144.    Defendants were required to properly pay plaintiffs and others similarly situated all wages due including applicable overtime wages for all hours worked in excess of 40 hours in a workweek.

145.    Defendants failed to pay plaintiffs and the FLSA Collective all wages due including overtime wages of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek to which they were entitled in accordance with the FLSA, 29 U.S.C. §207.

146.    Defendants' violation of the overtime requirements of the FLSA was part of their regular business practice and constituted a pattern, practice, and/or policy.

147.    As a result of defendants' violations of the FLSA, plaintiffs and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in an amount equal to their unpaid wages, prejudgment, and postjudgment interest, and reasonable attorneys' fees and costs pursuant to the FLSA, 29 U.S.C. §216(b).

148.    Defendants' unlawful conduct, as described above, was knowing, intentional and willful. Defendants knew or should have known that the practices complained of herein were unlawful. Defendants knew that plaintiffs and the FLSA Collective routinely worked in excess of forty hours per week.

149.    Defendants' violations of the FLSA in this First Claim for Relief have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. §255(a).

### SECOND CLAIM FOR RELIEF
### New Jersey Wage and Hour Law
### Unpaid Wages and Overtime Pay

150.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

151.    At all relevant times, the plaintiff and the New Jersey Rule 23 Class were employed by defendants within the meaning of the NJWHL.

152.    Defendants willfully violated plaintiff's rights and the rights of the members of the New Jersey Rule 23 Class, by unlawfully failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

153.    As a result of defendants' violations of the NJWHL, plaintiffs and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages at 200% their unpaid wages as permitted by N.J.S.A. 34:11-56a25, prejudgment and postjudgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, the FLSA Collective, the NJWHL Similarly Situated Class, and the New Jersey Rule 23 Class pray for the following relief:

A.      An order certifying the case as a collective action for the violations of the FLSA, as it pertains to the First Claim under the FLSA, 29 U.S.C. §216(b) for the employees described herein and designating plaintiffs' counsel as counsel for the FLSA Collective;

B.      Designation of the named plaintiffs as representatives of the FLSA Collective;

C.      Designation of the named plaintiffs as representatives of the NJWHL Similarly Situated Class;

D.      Designation of the named plaintiffs as representatives of the New Jersey Rule 23 Class;

E.      An order certifying the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to the Second Claim for the class of employees described herein, certifying the named plaintiffs as the class representatives and designating plaintiffs' counsel as Class counsel;

F.      Judgment for plaintiffs and the FLSA Collection Action members for all statutory, compensatory, and liquidated damages, or any other damages authorized by law or equity, sustained as a result of defendants' unlawful conduct, as well as prejudgment and postjudgment interest;

G.      Judgment for plaintiffs, the NJWHL Similarly Situated Class, and the New Jersey Rule 23 Class members for all statutory, compensatory, and liquidated damages, or any other damages authorized by law or equity, sustained as a result of defendants' unlawful conduct, as well as prejudgment and postjudgment interest;

H.      An award to plaintiffs the FLSA Collective, NJWHL Similarly Situated Class, and New Jersey Rule 23 Class for their reasonable attorneys' fees, costs, and expenses as authorized by law;

I.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and under appropriate state law; and

J.      Any and all other relief as authorized by the federal or state statutes, common law, or equity which the Court deems appropriate under the circumstances.

**LAW OFFICES OF MITCHELL SCHLEY, LLC**

By:    ___/s/Mitchell Schley_____
Mitchell Schley
mschley@schleylaw.com
197 Route 18 South
South Tower, Suite 3000
East Brunswick, NJ 08816
Telephone:  732-325-0318
*Attorney for Plaintiffs*

Dated:  March 2, 2023