## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANSISCA ARIAS, CHERIE LYN COWELL, PATRICIA KOSTAK, CRISTINA LINDNER, JOHANA PENA, and RAVEN VENTURA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, D/B/A ANNIEMAC HOME MORTGAGE, FAMILY FIRST FUNDING, LLC, GABRIEL GILLEN, an Individual, NEUSA GILLEN, an Individual, and SCOTT WEIKEL, an Individual,<br><br>                    Defendants. | Civil Case No.: 3:23-cv-01226-JBD |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT**

**TABLE OF CONTENTS**                                     <u>**Page**</u>

**TABLE OF AUTHORITIES** ........................................................................................ii-iii

**I.    PRELIMINARY STATEMENT** ....................................................................**2**

**II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY** ..............................**2**

**III.  LEGAL ARGUMENT** .................................................................................**6**

**IV.   SETTLEMENT ALLOCATION** ....................................................................**11**

**V.    ORDER OF ENFORCEMENT** .....................................................................**11**

**VI.   CONCLUSION** ........................................................................................**12**

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                         **Page(s)**

Bistricer v. Bistricer, 231 N.J. Super. 134, 147 (Ch. Div. 1987) .......................................6

Dep't of Pub. Advoc., Div. of Rate Couns. v. N.J. Bd. Of Pub.
Utils., 206 N.J. Super 523 (App. Div. 1985) ...............................................................6, 7

Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342,
348–49 (D.N.J. 1996).....................................................................................................6

Gere v. Louis, 209 N.J. 486, 500 (2012)...........................................................................6

Herrera v. Eastside Wok, Inc., 2014 U.S. Dist. LEXIS 164901,
at *11 (S.D.N.Y. 2014) ..................................................................................................12

Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961) ...................................6

Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005)..........................................7

Lahue v. Pio Costa, 263 N.J. Super. 575, 593 (App. Div. 1993)......................................6

Martin v. Hoveround Corp., 2011 WL 742573, at *2 (D.N.J. 2011)..................................6

McDonell v. Engine Distribs., 2007 WL 2814628, at *3 (D.N.J. 2007) ............................6

Mortellite v. Novartis Crop Prot. Inc., 460 F.3d 483, 492 (3d. Cir. 2006) .......................6

Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).......................................................................7

Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Labs, Inc.,
2023 U.S. Dist. LEXIS 102860, at *8 (D.N.J. 2023)........................................................7

Pascarella v. Bruck, 190 N.J. Super 118, 124-25 (App. Div. 1983) ....................................................7

Pietz v. Borough of Hasbrouck Heights, 2024 WL 1182090, at *5
(D.N.J. 2024) .......................................................................................................................................6

Schaffer's Auto, LLC v. Caernarvon Twp., 2023 U.S. Dist. LEXIS
183631, at *9-10 (E.D. Pa. 2023) ................................................................................................ 9-10

Singh v. Twp. of Weehawken, 2024 WL 1739867, at *5 (D.N.J. 2024) ..........................................6

Smith v. Fireworks By Girone, 380 N.J. Super. 273, 291-93
(App. Div. 2005) ..................................................................................................................................7

Washington v. Klem, 388 F. App'x 84, 85 (3d Cir. 2010) ...............................................................6

Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (N.J. 1992) ...........................................6

Zacharczuk v. Rego Trading, Inc., 2022 U.S. Dist. LEXIS 170406,
(D.N.J. 2022) ................................................................................................... 8, 9, 10, 11

## STATUTES

New Jersey Wage Theft Act  ...........................................................................................................3

N.J.S.A. 34:11-56a25 .......................................................................................................................3

## RULES

Fed. R. of Civ. P. 41(A)(1)(a)(ii) ....................................................................................................12

I.              **PRELIMINARY STATEMENT**

Six Named Plaintiffs and four Opt-In Plaintiffs (collectively "Plaintiffs") submit this Brief in support of their Motion to Enforce Settlement, against all Defendants.

At the invitation of the Court, Plaintiffs make this motion because at the December 17, 2024 settlement conference, the Parties on the record entered into a legally binding settlement agreement ("Settlement Agreement"), which remains unpaid.

The case settled for a total of ███████ to be paid by contributions from all Defendants. It is now four months later and the settlement has not been paid because Defendants have been endlessly squabbling about the language of a single term not material to the settlement and has nothing to do with the allegations of this wage and hour matter. Despite the Court's repeated efforts to have Defendants reach a resolution, the dispute remains and the Plaintiffs have been deprived of the negotiated settlement.

II.             **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On March 2, 2023, six former mortgage loan processors, Fransisca Arias, Cherie Lyn Cowell, Patricia Kostak, Cristina Lindner, Johana Pena, and Raven Ventura, filed a Class and Collective Action Complaint on behalf of themselves and those similarly situated, for unpaid overtime wages, in violation of the Fair Labor Standards Act (FLSA) and New Jersey Wage and Hour Law (NJWHL). The original Defendants were Family First Funding, LLC, a national mortgage company, and its owners Gabriel Gillen, Neusa Gillen and Scott Weikel who are each personally liable. Thereafter, on April 11, 2023, an Amended Complaint was filed adding American Neighborhood Mortgage Acceptance Company, Inc. ("AnnieMac") on the basis of successor liability, following a transaction between Family First Funding and AnnieMac. Discovery has revealed that the class consists of more than 200 employees who are entitled to

unpaid overtime wages going back six years pursuant to the New Jersey Wage Theft Act, which amended the NJWHL. The employees are also entitled to treble damages. N.J.S.A. 34:11-56a25.

Nonetheless, the six Named Plaintiffs and four Opt-In Plaintiffs decided to reach a settlement for themselves only, and not with respect to a collective or class as alleged in the Complaint. However, if all of the payments mandated by the settlement are not timely paid, Plaintiffs may proceed with a class and/or collective action against any non-paying Defendant.

On September 24, 2024, pursuant to Court Order (**ECF 71**), a mediation session was held with Hon. Joseph A. Dickson (ret.), which did not result in a settlement. On December 17, 2024, the Court held an in-person settlement conference (**ECF 73**). All six Named Plaintiffs took a day off of work and participated. All Defendants were present, each with their own lawyer. The Court devoted a full day to the conference, which resulted in an on-the-record settlement at 5:23 p.m.

The transcript of the December 17, 2024 on-the-record settlement identifies its material terms, and includes the following:

███████████████████████████████████████

███████████████████████████████████████

████

2.  Each contribution to be paid by separate check payable to Plaintiffs' counsel's trust account to be disbursed to Plaintiffs. Tr. 9;

3.  **After** the money is paid, the parties will ask the Court to dismiss the case. Tr. 10, 20, 26;

4.  Once the lawyers agreed to the settlement, which binds their clients, the Court went one step further and obtained approval individually and personally from each Defendant. Tr. 11-13;

At page 19 of the transcript, the Court states: I believe that the terms that have been discussed thus far today are all outlined and consistent with a settlement agreement, an <u>enforceable</u> settlement agreement. Tr. 19.

With regard to approval by Defendant Scott Weikel, the transcript at pages 12 and 13 contains the following:

The Court: All right. Mr. Weikel --

Mr. Weikel: Yes.

The Court: -- in the back. Have you had an opportunity to listen to the essential terms of the settlement agreement that defense counsel has outlined thus far?

Mr. Weikel: Yes, I have.

The Court: All right. And do you understand them?

Mr. Weikel: Yes, I do.

The Court: All right. Have you had an adequate opportunity to discuss with your attorney the essential terms of the proposed settlement?

Mr. Weikel: Yes, I have.

The Court: All right. And do you agree with them?

Mr. Weikel: Yes, I do.

The Court: All right.

After concluding that the settlement met the requirements of the FLSA, the Court states: And so I am prepared conditionally to approve the settlement agreement as we've set forth on the record today, pending final consummation of the settlement agreement and **payment**. Tr. 25-26. Finally, and importantly, the Court posed the following question separately to each attorney: Is there

4

anything that I've said that you have an issue with or need to add to? Each responded that they did

not, and the hearing ended. Tr. 27.

Thereafter, on December 23, 2024, the parties finalized and approved a formal written

agreement. This included a December 23 communication from Ms. Weckerly, counsel for Scott

Weikel. Despite this agreement, two weeks later, on December 7, 2025, Weikel demanded that

new language be added to the release provision, which the other Defendants rejected. (*See* letter

and documents attached to January 22, 2025 email to Court from counsel for AnnieMac). The

Court then held a conference on February 19 and gave Defendants an opportunity to address their

differences. **(ECF 85)**.

On February 28, Defendants reported to the Court that AnnieMac, Family First Funding, and

Scott Weikel agreed to revised release language as to Defendants, which was rejected by the

Gillens. **(ECF 87)**. The Court ordered the parties to continue to confer. **(ECF 88)**. In a March 7

status letter, Defendants informed the Court that new language proposed by the Gillens was

acceptable to AnnieMac and Family First Funding, but not to Weikel. **(ECF 89)**.

The Court held another conference on March 24 in an attempt to resolve the dispute. The Court

reported that it was able to close the gap among the Defendants but for one item. As far as Plaintiffs

can gather, Weikel rejected language that prohibits <u>him</u> from using the failure of a Defendant to

file a cross-claim against another Defendant in <u>this</u> case in an effort by a Defendant to seek a

dismissal of a claim Weikel filed in <u>his</u> New Jersey Superior Court action through the assertion of

the "entire controversy doctrine".[1] Consequently, the Court granted the parties leave to seek

enforcement of the Settlement Agreement. **(ECF 95)**.

---

[1] Following the December 17, 2024 settlement conference it was learned that on December 17,
2024, Scott Weikel filed a lawsuit in New Jersey Superior Court against his co-defendants in this

III.                    **LEGAL ARGUMENT**

"Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Singh v. Twp. of Weehawken*, 2024 WL 1739867, at \*5 (D.N.J. 2024) (citing *Martin v. Hoveround Corp.*, 2011 WL 742573, at \*2 (D.N.J. 2011); *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010)). "State law relating to the construction and enforcement of contracts govern a federal court's enforcement of contracts." *Pietz v. Borough of Hasbrouck Heights*, 2024 WL 1182090, at \*5 (D.N.J. 2024), report and recommendation adopted, 2024 WL 1177987 (D.N.J. 2024) (citing *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348–49 (D.N.J. 1996)).

"Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (N.J. 1992). "Under New Jersey law, a settlement agreement is a form of contract, and courts must look to the general rules of contract law to resolve disputes over a settlement agreement." *Mortellite v. Novartis Crop Prot. Inc.*, 460 F. 3d 483, 492 (3d. Cir. 2006).

It is well-established that New Jersey public policy strongly favors settlement of litigation. *Gere v. Louis*, 209 N.J. 486, 500 (2012); *Jannarone v. W.T. Co.*, 65 N.J. Super. 472, 476 (App. Div. 1961), *certif. denied*, 35 N.J. 61 (1961); *Lahue v. Pio Costa*, 263 N.J. Super. 575, 593 (App. Div. 1993), *certif. denied*, 134 N.J. 477 (1993). "[C]ourts will [therefore] strain to give effect to the terms of a settlement wherever possible.'" *McDonell v. Engine Distribs.,* 2007 WL 2814628, at \*3 (D.N.J. 2007), aff'd 314 F. App'x 509 (3d Cir. 2009) (quoting *Dep't of Pub. Advoc., Div. of*

---

case, concerning a multi-year dispute with the Gillens regarding their purchase of his interest in Family First Funding. *See* **Exhibit A**.

*Rate Couns. v. N.J. Bd. Of Pub. Utils.*, 206 N.J. Super 523 (App. Div. 1985). *Bistricer v. Bistricer*, 231 N.J. Super. 134, 147 (Ch. Div. 1987) (quoting *Dep't of Pub. Advocate v. N.J. Ed. of Pub. Utils.*, 206 N.J. Super. 523, 528 (App. Div. 1985)).

In fact, New Jersey's public policy favoring settlement is so strong that, as in any other contract action, the party seeking to set aside a settlement has the burden of proving an "extraordinary circumstance sufficient to vitiate the agreement." *Jennings v. Reed*, 381 N.J. Super. 217, 227 (App. Div. 2005); *Pascarella v. Bruck* 190 N.J. Super 118, 124-25 (App. Div. 1983) (instructing that an "agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts."). Thus, a settlement agreement may be set aside only on "clear and convincing" proof of fraud, "mutual mistake, undue haste, pressure or unseemly conduct on the settlement negotiations." *Smith v. Fireworks By Girone*, 380 N.J. Super. 273, 291-93 (App. Div. 2005), *certif. denied*, 186 N.J. 243 (2006). *Nolan v. Lee Ho,* 120 N.J. 465, 472 (1990). In the instant matter, there is no clear and convincing proof of an extraordinary circumstance that warrants the setting aside of this valid settlement agreement.

"A settlement agreement does not need to contain every possible term to be enforceable. Rather, so long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound. As long as those essential terms are agreed to, the settlement will be enforced notwithstanding the fact … that the writing does not materialize because a party later reneges. **This is true even if the parties contemplate the later execution of a formal document to memorialize their undertaking.**" *Ortho-Clinical Diagnostics, Inc. v Fulcrum Clinical Labs, Inc.*, 2023 U.S. Dist. LEXIS 102860, at *8 (D.N.J. 2023) (citations and quotation marks omitted) (emphasis added).

In the instant matter not only were the essential and material terms of the settlement put on the record but, except for a single non-material paragraph, the parties finalized a formal written agreement. However, the law in this Circuit makes it abundantly clear that this one paragraph cannot impede the enforcement of this settlement.

In this regard, numerous courts have enforced on-the-record settlements notwithstanding subsequent disagreements. For example, in *Zacharczuk v. Rego Trading, Inc.*, also a wage and hour case, the Court enforced an on-the-record settlement at plaintiff's request after the defendant declined to sign a formal agreement over the disagreement regarding a single provision. In doing so, Magistrate Judge Wettre expressed a frustration that also rings true here.

> Plaintiff's motion seeks to enforce a settlement that was reached in an ordinary manner, contains ordinary terms, and was memorialized on the record in an ordinary way. The only thing extraordinary about this motion is that plaintiff was forced to file it in the first place — and worse, was forced to oppose defendants' improper cross-motion for sanctions. Because the parties manifested their unequivocal acceptance of all the essential terms of an enforceable settlement agreement on the record before the Court many months ago and plaintiff has yet to receive the fruits of that settlement due to defendants' recalcitrance, the undersigned recommends that the Court enforce the settlement and deny defendants' cross-motion for sanctions.

2022 U.S. Dist. LEXIS 170406, at *2 (D.N.J. 2022), report and recommendation adopted, 2022 U.S. Dist. LEXIS 169468 (D.N.J. 2022) (Wigenton, J.) (a court places settlement terms on the record "so that all involved understand that the settlement is enforceable regardless of whether subsequent squabbling during the memorialization process prevents the signing of a final written agreement, as occurred here." *Id.* at *4, n.1, and collecting cases). This Opinion also contains several principles particularly germane to the instant matter.

**First**, when determining if there is a meeting of the minds regarding an on-the-record settlement agreement, "it is the objective expression of terms, not one party's subjective understanding, that governs." *Id.* at *8.

**Second**, in the course of a court settlement conference, "wide-ranging arguments and ideas often are discussed for hours before they are winnowed down to an agreement with particular terms." (citations omitted). *Id.* at *9.

**Third**, "what was 'discussed' at the conference is patently irrelevant and does not require a deep dive into all participants' memories. If a representation from Plaintiff on a particular point was an essential term of the settlement then it needed to be expressed on the record as part of the settlement." *Id.* at *13 (citations omitted).

*Zacharczuk* was affirmed in a 12-page Opinion of the Third Circuit Court of Appeals, No. 22-2971, September 25, 2023, attached as **Exhibit B.**

Likewise in *Schaffer's Auto., LLC v. Caernarvon Twp.*, after an on-the-record settlement, plaintiff balked at signing a formal settlement agreement because of the language of a single extraneous provision. In rejecting plaintiff's position and enforcing the settlement, the Court made the following pertinent observations:

> The "towing agreement" now at issue was not discussed as part of these agreed-upon terms. Indeed, the towing agreement is not once referenced in the March 31, 2023 transcript. Therefore, Plaintiffs' repeated claim that the towing agreement was "part of this settlement" is not supported by the record.
>
> ***
>
> As is clear from the transcript, however, Plaintiffs never communicated such a condition to settlement while confirming the essential terms of the agreement. If a specific towing agreement was a prerequisite to settling, it was incumbent upon Plaintiffs to express said condition on the record.

*Schaffer's Auto, LLC v Caernarvon Twp.*, 2023 U.S. Dist. LEXIS 183631, at *9-10 (E.D.Pa. 2023), report and recommendation adopted, 2024 U.S. Dist. LEXIS 10543 (E.D.Pa. 2024) (emphasis added).

Application of the foregoing legal principles can lead to only one conclusion here: The parties clearly, definitively and unambiguously entered into a binding settlement agreement recorded on the record before the Court. The essential and material terms necessary to form a binding settlement agreement were recited and each Defendant and each counsel stated their agreement. The Court invited the parties to express any objection to the settlement or state that it was incomplete. None did so. All individual Defendants are sophisticated business people. There are no material terms or facts for resolution, so there is no reason to hold an evidentiary hearing. *See Zacharczuk* at *11.

In connection with the provision preventing the Defendants from signing the formal agreement, Scott Weikel's February 18 letter to the Court **(ECF 84)** addresses his concern. It relates to a separate business dispute among Defendants, which has nothing to do with Plaintiffs' claim for overtime wages. According to this letter from Weikel's counsel--who was not even present at the settlement conference--Weikel believes that he expressed the need for certain language at some point during the course of the all-day conference. But it is not referenced in the transcript, let alone identified as a material term, and thus has no relevance to the instant Motion. Yet in the February 18 letter, Weikel's counsel argues that, "There is nothing in the transcript that contradicts Mr. Weikel's understanding of the terms that were agreed upon during the December 17th settlement conference." **(ECF 84,** p. 2) (emphasis added). This is the very definition of a non sequitur. Thus, by this confounding reasoning, anything someone "understands" that is not

"contradicted" by the transcript, can serve to defeat a settlement. This type of argument was squarely rejected by the Court in *Zacharczuk,* as follows:

> Frankly, the Court cannot recall what the parties discussed on this point at the settlement conference given the many hours it spent in that conference and others since then. But what was "discussed" at the conference is patently irrelevant and does not require a deep dive into all participants' memories. If a representation from plaintiff on a particular point was an essential term of settlement then it needed to be expressed on the record as part of the settlement.

*Zacharczuk* at *13 (citations omitted).

This Court has given Defendants every opportunity to agree to language for a single provision that has held up payment for four months. Plaintiffs respectfully request that the settlement reached and recorded before the Court, be enforced.

**IV.**                    <u>**Settlement Allocation**</u>

Attached as **Exhibits A and B** to the Certification of Plaintiffs' counsel, is a calculation of the settlement allocation.

**Exhibit A** sets forth (a) Legal Expenses, (b) Net Settlement Amount after Legal Expenses, (c) Attorney's Legal Fees of one-third of Net Settlement Amount, and (d) Amount to be divided among the 10 Plaintiffs who are party to the Settlement.

**Exhibit B** sets forth the specific allocation to each Plaintiff who is party to the Settlement. As shown, each of the 10 Plaintiffs receives a pro-rata share of ███████ based on the number of weeks each Plaintiff was employed by Family First Funding within the Liability Period, which begins on August 6, 2019 and ends on March 5, 2023.

**V.**                    <u>**Order of Enforcement**</u>

This settlement is somewhat different from most because it requires separate payments from different Defendants. The settlement terms provide that the case not be dismissed unless all

payments are made. Tr. 10, 20, 26. Plaintiffs submit that consistent with the transcript, if a Defendant pays its share as ordered, Plaintiffs and that Defendant will seek dismissal of that Defendant with prejudice pursuant to Rule 41(A)(1)(a)(ii). If a Defendant does not pay its share, it will not be dismissed and Plaintiffs can proceed with the action against that Defendant until judgment. *See, e.g., Herrera v. Eastside Wok, Inc.*, 2014 U.S. Dist. LEXIS 164901, at *11 (S.D.N.Y. 2014) (failure to timely pay court enforced on-the-record wage and hour case settlement will result in further proceedings with the court). <u>A proposed Order has been submitted to the Court.</u>

**VI.** <u>**CONCLUSION**</u>

For the reasons set forth above, the Plaintiffs respectfully request that an Order be made and entered granting its Motion to Enforce the Settlement against all Defendants.

Respectfully submitted,

**Law Offices of Mitchell Schley, LLC**

By s/ *Mitchell Schley*
Mitchell Schley, Esq.
197 Route 18, Suite 3000
East Brunswick, NJ 08816
Telephone: (732) 325-0318
mschley@schleylaw.com
*Attorneys for Plaintiffs*

Dated: April 25, 2025

# Exhibit A

Judiciary eCourts System - Civil Part

Home    Help    Logout

| CASE JACKET | | User:MITCHELL SCHLEY |

## Docket Number:  MON L 004252 - 24

| Back | | Create Summary Report |

**Case Caption:** Weikel Scott Vs Gillen Gabriel

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Monmouth | **Case Initiation Date:** 12/17/2024 |
| **Case Type:** Other | **Case Status:** Active | **Jury Demand:** 12 Jurors |
| **Case Track:** 1 | **Judge:** Andrea I Marshall | **Team:** 2 |
| **# of Discovery Days:** 150 | **Age of Case:** 00 YR 04 MO | **Consolidated Case:** N |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

| Plaintiffs (1) | Defendants (6) | ACMS Documents (5) | Fees (1) |

| Scott Weikel | (Party No. 1) |

### Case Actions

| Filed Date | Filings | | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|---|
| 12/17/2024 | 📎 | ✉ | Complaint with Jury Demand for MON-L-004252-24 submitted by CARBONE, DANIEL J, BATHGATE WEGENER & WOLF, PC on behalf of SCOTT WEIKEL against GABRIEL GILLEN, NEUSA GILLEN, JOSEPH PANEBIANCO, ANNIEMAC HOME MORTGAGE, JANE AND JOHN DOES 1-5 ET AL. | LCV20243224643 | 12/17/2024 |
| 12/18/2024 | 📎 | ✉ | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20243229815 | 12/18/2024 |
| 02/28/2025 | 📎 | ✉ | AFFIDAVIT OF SERVICE submitted by CARBONE, DANIEL, J of BATHGATE WEGENER & WOLF, PC on behalf of SCOTT WEIKEL against GABRIEL GILLEN, NEUSA GILLEN, JOSEPH PANEBIANCO, ANNIEMAC HOME MORTGAGE, JANE AND JOHN DOES 1-5 ET AL. | LCV2025489964 | 02/28/2025 |
| 02/28/2025 | 📎 | ✉ | AFFIDAVIT OF SERVICE submitted by CARBONE, DANIEL, J of BATHGATE WEGENER & WOLF, PC on behalf of SCOTT WEIKEL against GABRIEL GILLEN, NEUSA GILLEN, JOSEPH PANEBIANCO, ANNIEMAC HOME MORTGAGE, JANE AND JOHN DOES 1-5 ET AL. | LCV2025489997 | 02/28/2025 |
| 02/28/2025 | 📎 | ✉ | AFFIDAVIT OF SERVICE submitted by CARBONE, DANIEL, J of BATHGATE WEGENER & WOLF, PC on behalf of SCOTT WEIKEL against GABRIEL GILLEN, NEUSA GILLEN, JOSEPH PANEBIANCO, ANNIEMAC HOME MORTGAGE, JANE AND JOHN DOES 1-5 ET AL. | LCV2025490015 | 02/28/2025 |
| 02/28/2025 | 📎 | ✉ | AFFIDAVIT OF SERVICE submitted by CARBONE, DANIEL, J of BATHGATE WEGENER & WOLF, PC on behalf of SCOTT WEIKEL against GABRIEL GILLEN, NEUSA GILLEN, JOSEPH PANEBIANCO, ANNIEMAC HOME MORTGAGE, JANE AND JOHN DOES 1-5 ET AL. | LCV2025490040 | 02/28/2025 |

Showing 1 to 6 of 6 entries

# Exhibit B

Case 3:23-cv-01226-JBD   Document 108   Filed 05/05/25   Page 19 of 30 PageID: 848
Case 2:19-cv-20022-SDW-LDW   Document 72-2   Filed 10/17/23   Page 1 of 12 PageID:
374

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2971

_____

JENNIFER ZACHARCZUK

v.

REGO TRADING, INC.; BASIC TRUCKING, INC.;
VLADIMIR SHUKHMAN,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-19-cv-20022)
District Court Judge: Honorable Susan D. Wigenton

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2023

Before: CHAGARES, _Chief Judge_, HARDIMAN, and MONTGOMERY-REEVES,
_Circuit Judges_.

(Opinion filed: September 25, 2023)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

Case 3:23-cv-01226-JBD    Document 108    Filed 05/05/25    Page 20 of 30 PageID: 849
Case 2:19-cv-20022-SDW-LDW    Document 72-2    Filed 10/17/23    Page 2 of 12 PageID:
375

MONTGOMERY-REEVES, *Circuit Judge*.

Rego Trading, Inc., Basic Trucking, Inc., and Vladimir Shukhman (collectively,

"Rego Trading") appeal the District Court's order granting Jennifer Zacharczuk's motion

to enforce a settlement agreement. Because the parties entered into an enforceable

contract at the settlement conference, we will affirm the District Court's order.

## I.    BACKGROUND

In November 2019, Zacharczuk sued Rego Trading under the Fair Labor

Standards Act, the New Jersey Wage and Hour Law, and the New Jersey Law Against

Discrimination. In October 2021, the parties participated in a settlement conference with

the Magistrate Judge. After the settlement conference, the Magistrate Judge held a

settlement hearing, and the parties agreed to the essential terms of a settlement on the

record. The terms were:

- Rego Trading agreed to pay $13,000 to Zacharczuk and $8,000 to her
  counsel, the Jaffee Glenn law firm.

- Zacharczuk agreed to dismiss with prejudice her claims under the Fair
  Labor Standards Act and the New Jersey Law Against Discrimination
  before payment of the settlement sum.

- Zacharczuk agreed to dismiss with prejudice her remaining claims upon
  payment of the settlement sum.

- Zacharczuk "agree[d] to full confidentiality to the extent permitted by
  public policy of the settlement and settlement terms." App. 91a.

- Zacharczuk agreed to keep confidential all information relating to Rego
  Trading gained during her employment.

- Zacharczuk agreed to provide written notice to Rego Trading if she was
  subpoenaed or otherwise ordered to produce information protected by these
  confidentiality clauses.

2

- Zacharczuk agreed that if she violates the confidentiality clauses, liquidated damages will be $5,000.

- Zacharczuk agreed to provide a full general release to Rego Trading.

- Rego Trading agreed to provide a mutual reference regarding Zacharczuk's employment upon request.

- The prevailing party will be entitled to reasonable attorneys' fees in any lawsuit arising from the settlement agreement.

The Magistrate Judge also entered an order administratively terminating the action, stating that "[t]he parties hav[e] reached a settlement in principle at the conclusion of an October 7, 2021 Zoom settlement conference." 60-Day Order Administratively Terminating Action, ECF No. 38. The order added that "absent receipt from the parties of dismissal papers or a request to reopen the action within the 60-day period, the Court shall dismiss this action, without further notice, with prejudice and without costs." *Id.*

The parties, through counsel, then exchanged drafts of the written settlement agreement. On November 5, Zacharczuk's counsel sent a finalized version of the agreement, signed by Zacharczuk, to Rego Trading's counsel. On December 8, the parties requested a "60-day extension of the administrative termination period." Letter from Andrew L. Glenn, Esq., to Hon. Leda Wetter, ECF No. 40. In that request, the parties asked the Magistrate Judge to "assist" with "consummat[ing] the settlement," as they had been unable to do so themselves. *Id.*

The Magistrate Judge held several telephone conferences with the parties between January and April 2022, and on April 6, the Magistrate Judge granted Zacharczuk leave

3

to file a motion to enforce the settlement agreement. The parties briefed the motion,[1] and on August 30, the Magistrate Judge issued a report and recommendation suggesting that the District Court grant the motion to enforce the settlement agreement. On September 20, the District Court adopted the report and recommendation and granted Zacharczuk's motion to enforce the settlement agreement. This appeal followed.

## II.   DISCUSSION[2]

Rego Trading makes two arguments on appeal: first, that the District Court erred by concluding that the parties reached an enforceable settlement agreement at the settlement hearing; and second, that the District Court erred by not holding an evidentiary hearing before issuing the report and recommendation. Neither argument succeeds.

### A.   Enforceable Settlement Agreement

Rego Trading argues that the parties failed to reach an enforceable settlement agreement at the settlement hearing for three reasons: (1) because the parties intended to

---

[1] Zacharczuk attached several exhibits to her Reply to Defendant's Opposition to Plaintiff's Motion to Enforce the Parties' Settlement Agreement, including an email from her counsel to Rego Trading's counsel dated March 16, 2021, which states, "In light of the impending discovery deadline, I want to cut to the chase instead of going back and forth. As you probably expected, after discussing your offer with my client, she wants to split it in the middle at $40,000.00. She has clearly been speaking with someone else, probably an attorney." App. 145a. Rego Trading did not file any exhibits with its brief opposing the motion.

[2] The District Court had jurisdiction over this case under 28 U.S.C. § 1331 and §1367. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We treat a motion to enforce a settlement agreement the same as a motion for summary judgment. *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). We therefore exercise plenary review. *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004); *Tiernan*, 923 F.2d at 1031.

4

Case 3:23-cv-01226-JBD    Document 108    Filed 05/05/25    Page 23 of 30 PageID: 852
Case 2:19-cv-20022-SDW-LDW    Document 72-2    Filed 10/17/23    Page 5 of 12 PageID:
378

memorialize their agreement in writing; (2) because there was a mutual mistake or lack of

meeting of the minds about the meaning of "full confidentiality"; and (3) because the

settlement agreement was the product of fraud in the inducement.  None of these

arguments succeed.

Rego Trading first argues that the parties' intent to later memorialize the

settlement agreement in writing prevented them from forming an enforceable oral

contract.  Under New Jersey law,[3] "[a] settlement agreement between parties to a lawsuit

is a contract like any other contract." *Peskin v. Peskin*, 638 A.2d 849, 856 (N.J. Super.

Ct. App. Div. 1994) (citing *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990); *De Caro v.

De Caro*, 97 A.2d 658, 662 (N.J. 1953)).  "Thus, if parties agree on essential terms and

manifest an intention to be bound by those terms, they have created an enforceable

contract." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (collecting

cases).  "So long as the basic essentials are sufficiently definite, any gaps left by the

parties should not frustrate their intention to be bound." *Berg Agency v. Sleepworld-

Willingboro, Inc.*, 346 A.2d 419, 424 (N.J. Super. Ct. App. Div. 1975).

New Jersey law also addresses the situation, like here, where the parties agree to

essential terms—orally, in an informal memorandum, or both—while contemplating "the

execution later of a formal document to memorialize their undertaking." *McBarron v.

Kipling Woods L.L.C.*, 838 A.2d 490, 491 (N.J. Super. App. Div. 2004) (quoting

*Comerata v. Chaumont, Inc.*, 145 A.2d 471, 475 (N.J. Super. App. Div. 1958)).  In this

---

[3] The District Court applied New Jersey substantive law below.  The parties do not
dispute that New Jersey substantive law applies.

5

Case 3:23-cv-01226-JBD    Document 108    Filed 05/05/25    Page 24 of 30 PageID: 853
Case 2:19-cv-20022-SDW-LDW    Document 72-2    Filed 10/17/23    Page 6 of 12 PageID:
379

circumstance, an enforceable contract exists based on the oral agreement if the parties

"agree upon all the essential terms of a contract and effectively bind themselves thereon,

if that is their intention," despite intending to memorialize their agreement in a later

writing. *Id.* (quoting *Comerata*, 145 A.2d at 475). We look to the language of the

agreement and the contemporaneous circumstances to discern whether the parties

intended to be bound by their oral agreement despite contemplating a later

comprehensive writing. *See Barr v. Barr*, 11 A.3d 875, 882 (N.J. Super. Ct. App. Div.

2011) (quoting *Celanese Ltd. v. Essex Cnty. Improvement Auth.*, 962 A.2d 591, 600 (N.J.

Super. Ct. App. Div. 2009)).

Here, the parties agreed to the essential terms of the settlement agreement on the

record and expressed their intent to be bound by those terms, despite contemplating a

formal agreement to memorialize the settlement. Rego Trading's counsel stated:

> I have exchanged term sheets with Mr. Glenn, and we
> have agreed to the following essential terms. The parties will,
> however, reduce the settlement to a formal agreement, and
> while we do that, the Court will dismiss the case today as
> settled under a 60-day order with the right to reopen if we can't
> consummate the settlement agreement.

App. 91a. Rego Trading's counsel then recited the essential terms on the record and

asked his client "on behalf of the defendants, do you understand these essential terms and

agree to the settlement that we've reached today with Judge Wettre?" App. 93a.

Shukhman, on behalf of Rego Trading, replied "I do." *Id.* Zacharczuk's counsel then

had the following exchange with her:

> Ms. Zacharczuk, do you understand the terms that were
> read on the record by [Rego Trading's counsel] moments ago?

6

MS. ZACHARCZUK: I do.

. . .

MR. GLENN: Okay. And you understand that you will be bound by all the terms, essential terms read on the record?

MS. ZACHARCZUK: Yes.

MR. GLENN: And you agree to those terms?

MS. ZACHARCZUK: Yes.

App. 94a. Shortly after these two exchanges, the District Court stated, "Now that you've agreed to the essential terms of the settlement, those form a binding contract. You will expand upon those terms in a settlement agreement. But you've agreed to be bound by the settlement we've put on the record." App. 95a. Neither party gave any indication that the District Court's statement was incorrect and that they did not, in fact, intend to be bound by their agreement to the essential terms. Because both parties stated their agreement to the essential terms and their intent to be bound by those terms, despite also contemplating a later formal memorialization of the full agreement, the parties created an enforceable contract at the settlement hearing.

Second, Rego Trading argues that an enforceable contract was not formed because there was no meeting of the minds as to the meaning of the term "full confidentiality."[4]

---

[4] Rego Trading also argues that there was a mutual mistake as to the meaning of the term "full confidentiality" that frustrated the formation of the contract. While it is correct that "a compromise which is the result of a mutual mistake is not binding," *Wallace v. Summerhill Nursing Home*, 883 A.2d 384, 386 (N.J. Super. Ct. App. Div. 2005) (quoting *Lampley v. Davis Mach. Corp.*, 530 A.2d 1254, 1259 (N.J. Super. Ct. App. Div. 1987)), "[t]he doctrine of mutual mistake applies when a 'mistake was mutual in that both parties were laboring under the *same* misapprehension as to [a] particular, essential fact,'" *id.* (quoting *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659 (N.J. 1989)). Here, the

7

"The parties are bound by the contracts they make for themselves, with the understanding that 'a meeting of the minds is an essential element to the valid consummation' of any agreement." *Barr*, 11 A.3d at 882 (quoting *Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 810 A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002)). "Accordingly, in interpreting an agreement, we 'must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain.'" *Id.* (quoting *Celanese*, 962 A.2d at 600). But if we find that the terms of a contract are "clear and unambiguous" then "there is no room for construction" and we will give the terms "their plain, ordinary meaning." *Id.* (first quoting *Watson v. City of E. Orange,* 815 A.2d 956, 959 (N.J. 2003) (Long, J., dissenting); and then quoting *Pizzullo v. N.J. Mfrs. Ins. Co.*, 952 A.2d 1077, 1088 (N.J. 2008)). "A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning." *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002). It is a "long-settled principle" of New Jersey law "that a party to a contract 'is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that outwardly manifested.'" *Id.* (quoting *Domanske v. Rapid-American Corp.*, 749 A.2d 399, 402 (N.J. Super. Ct. App. Div. 2000)).

---

mistake that Rego Trading points to was that the parties held *different*, subjective understandings of the term "full confidentiality." This purported mistake was not "mutual," so it does not prevent the formation of an enforceable contract.

Here, Rego Trading contends that it had a subjective understanding of the meaning of the confidentiality provision that the parties agreed to at the settlement hearing. Rego Trading's counsel articulated the confidentiality provision on the record as follows: "The plaintiff agrees to full confidentiality to the extent permitted by public policy of the settlement and settlement terms." App. 91a. Rego Trading now argues that the term "full confidentiality" is ambiguous, that one of the reasonable interpretations is that the term includes not only Zacharczuk but also Zacharczuk's counsel, and that this reasonable interpretation was in fact Rego Trading's subjective understanding of the term. The District Court rejected this argument, concluding that the confidentiality provision was unambiguous and that any subjective, hidden intent by Rego Trading was immaterial. The District Court is correct.

The confidentiality provision is not ambiguous. A contract term is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citing *Nester v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997)). Here, "full confidentiality" is not susceptible to at least two reasonable interpretations. As the District Court pointed out, the modifier "full" describes the amount of confidentiality, which is then limited by the phrase "to the extent permitted by public policy." This means that "the plaintiff" agrees to keep the settlement agreement and settlement terms as confidential as the law will allow. It is not reasonable to interpret this term as incorporating Zacharczuk's counsel's agreement to be bound by the confidentiality provision. Rego Trading's reading of "full confidentiality" would require us to interpret

9

that phrase to apply to *who* was agreeing to be bound rather than *what* Zacharczuk was

agreeing to be bound to and then to interpret that who to encompass only Zacharczuk's

counsel, a third party to both the settlement agreement and the lawsuit, as opposed to any

number of other third parties. This is a clearly unreasonable interpretation.[5] Thus, we

will hold Rego Trading to the unambiguous term to which the parties agreed. *Schor*, 814

A.2d at 1112.

Third and finally, Rego Trading asserts that the contract is not enforceable because

Zacharczuk fraudulently induced Rego Trading to enter into the contract by

misrepresenting that she had not discussed the lawsuit with any former employees of Rego

Trading. Fraudulent inducement "requires proof of (1) a material misrepresentation of a

presently existing or past fact; (2) the maker's intent that the other party rely on it; and

(3) detrimental reliance by the other party." *First Am. Title Ins. Co. v. Lawson*, 827 A.2d

230, 237 (N.J. 2003) (quoting *Liebling v. Garden State Indem.*, 767 A.2d 515, 518 (N.J.

Super. Ct. App. Div. 2001)). There was no material misrepresentation.

Nothing in the record supports Rego Trading's allegation that Zacharczuk

represented during the settlement conference (or earlier) that she had not discussed the

lawsuit with any other former employees or that such a fact was a prerequisite for the

settlement agreement.[6] To the contrary, an email from several months before the

---

[5] Nor can "[t]he plaintiff" in the full confidentiality provision reasonably be understood as meaning both Zacharczuk (the plaintiff) and her counsel (the plaintiff's counsel).

[6] Rego Trading's counsel makes these representations in his brief, but unsworn statements in briefs do not constitute evidence. *See Thornton v. United States*, 493 F.2d

10

Case 3:23-cv-01226-JBD    Document 108    Filed 05/05/25    Page 29 of 30 PageID: 858
Case 2:19-cv-20022-SDW-LDW    Document 72-2    Filed 10/17/23    Page 11 of 12 PageID:
384

settlement hearing shows that Rego Trading's counsel knew that Zacharczuk had

discussed the lawsuit with someone.  And nowhere in the settlement hearing transcript,

which contains the essential terms of the parties' settlement agreement, does Zacharczuk

represent that she had not discussed the lawsuit with any former employees.  A party

opposing enforcement of a settlement agreement must do more than rest upon mere

allegations, general denials, or vague statements.  *See Saldana v. Kmart Corp.*, 260 F.3d

228, 232 (3d Cir. 2001).  Because nothing in the record indicates that Zacharczuk made a

representation about not speaking to former employees before entering into the settlement

agreement, or that such a representation was an essential term of the settlement agreement,

Rego Trading has failed to show that it was fraudulently induced to enter the settlement

agreement.  Thus, the District Court correctly held that the parties entered into an

enforceable settlement agreement at the settlement hearing.

### B.    Evidentiary Hearing

Rego Trading also avers that the District Court erred by not holding an evidentiary

hearing before issuing its report and recommendation.  On the one hand, "where material

facts concerning the existence or terms of an agreement to settle are in dispute, the parties

must be allowed an evidentiary hearing." *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364

F.3d 106, 113 (3d Cir. 2004) (emphases removed) (quoting *Tiernan*, 923 F.2d at 1031).

"On the other hand, no hearing is necessary where there is no dispute as to the existence

of a settlement." *Tiernan*, 923 F.2d at 1031 (citing *Petty v. Timken Corp.*, 849 F.2d 130,

---

164, 167 (3d Cir. 1974); *Trap Rock Indus., Inc. v. Loc. 825, Int'l Union of Operating
Eng'rs, AFL-CIO*, 982 F.2d 884, 892 (3d Cir. 1992).

Case 3:23-cv-01226-JBD    Document 108    Filed 05/05/25    Page 30 of 30 PageID: 859
Case 2:19-cv-20022-SDW-LDW    Document 72-2    Filed 10/17/23    Page 12 of 12 PageID:
385

132 (4th Cir. 1988)).  The District Court correctly held that there was no question of material fact as to the existence or terms of the settlement agreement, as discussed *supra*, so there was no dispute of material fact concerning the existence or terms of the settlement agreement to necessitate an evidentiary hearing.  The District Court thus did not err by declining to hold an evidentiary hearing.

## IV.    CONCLUSION

For the reasons discussed above, we will affirm the District Court's order enforcing the settlement agreement.

12