UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANSISCA ARIAS, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FAMILY FIRST FUNDING, LLC, *et al.*,<br><br>　　　　Defendants. | Civ. No. 23-1226 (JBD)<br><br>OPINION<br>(Redacted) |

At the conclusion of an exhaustive, all-day settlement conference in December 2024, the parties agreed to a settlement that would fully and finally resolve plaintiffs' federal and state wage claims asserted in this case. A dispute has arisen, however, about the meaning and scope of the putative terms of the settlement agreement. Unable to resolve the dispute, all parties have filed competing motions to enforce some version of the agreement. Specifically, motions to enforce settlement have been filed and briefed by defendant American Neighborhood Mortgage Acceptance Company, LLC, d/b/a AnnieMac Home Mortgage ("AnnieMac"); defendants Gabriel and Neusa Gillen (the "Gillens"); defendant Family First Funding, LLC ("Family First"), which joins and adopts the motions filed by AnnieMac and the Gillens; defendant Scott Weikel; and plaintiffs.

The Court is well familiar with this matter, having presided over and actively participated in the negotiations during the settlement conference that led to the agreement now under review. Additionally, the Court sponsored follow-up discussions amongst the parties in an attempt to resolve the present dispute.

The Court also has carefully reviewed the record and the parties' submissions in support of the various motions to enforce.

To resolve the dispute, the Court must decide whether the settlement agreement requires AnnieMac and the Gillens to waive or release certain defenses that they may have to claims that Weikel has asserted against them in separate litigation filed in New Jersey state court (the "State Court Action"). For the reasons set forth below, the Court concludes that the settlement agreement does not include such a waiver or release. Accordingly, the Court GRANTS the Gillens' and plaintiffs' motions to enforce; GRANTS Family First's follow-on motion to enforce; GRANTS in part and DENIES in part AnnieMac's motion to enforce; and DENIES Weikel's motion to enforce. The Court also GRANTS a separate motion filed by Salmon, Ricchezza, Singer & Turchi, LLP ("SRST") to withdraw as Weikel's counsel.

## I.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Background

On March 2, 2023, plaintiffs, all former employees of Family First, filed a putative class and collective action complaint on behalf of themselves and others similarly situated. [Dkt. 1.] In the complaint, plaintiffs alleged violations of the federal Fair Labor Standards Act and the New Jersey Wage and Hour Law by Family First, the Gillens, and Weikel for failure to pay overtime wages. *Id.* Plaintiffs later filed an amended complaint on April 11, 2023, adding AnnieMac as a defendant, claiming that it was liable as a successor to Family First. [Dkt. 5.] Defendants filed answers to the amended complaint, the Court held an initial

scheduling conference in July 2023, and the case proceeded to discovery. *See, e.g.,* [Dkts. 12-17]. In January 2024, SRST entered its appearance as counsel for defendant Weikel pursuant a class action defense insurance policy. [Dkt. 50]; [Dkt. 78-2] ¶ 2; [Dkt. 106-2] ¶ 4.[1]

Separately during this litigation, Weikel retained Bathgate, Wegener, and Wolf, P.C. ("Bathgate") as counsel to investigate and pursue separate state law claims against AnnieMac and the Gillens, which concerned the Gillens' earlier purchase of Weikel's interest in Family First. [Dkt. 78-2] ¶ 4; [Dkt. 106-2] ¶ 3; [Dkt. 106-3] ¶ 3. Although Weikel's state law claims neither arise out of nor relate to the state and federal wage claims that plaintiffs assert in this case, the state law claims took on significance during the settlement conference and now form the basis of the present dispute. Accordingly, some brief background is in order.

Weikel and the Gillens co-owned Family First until April 2021, when Weikel decided voluntarily to part ways with the company. [Dkt. 106-4] at 2; [Dkt. 84] ¶¶ 9-12. The Gillens and Weikel negotiated a buyout, which contemplated the Gillens' acquisition of Weikel's interest in Family First for $18 million. [Dkt. 106-4] at 23; [Dkt. 84] ¶¶ 15-17. Weikel's state law claims arise from AnnieMac's alleged purchase of Family First, without consultation or consent from Weikel, amid the Gillens' buyout of Weikel's interest in Family First. [Dkt. 84] at 4-23. Specifically, Weikel claims that unbeknownst to him, at the same time that the Gillens and

---

[1]    Family First and the Gillens also had new counsel enter their appearances at that time. [Dkts. 49, 51.]

Weikel were negotiating the buyout, the Gillens negotiated a transaction between AnnieMac and Family First, pursuant to which AnnieMac would purchase and become the successor-in-interest to Family First.  [Dkt. 84] ¶¶ 18-19.  Weikel further claims that with a commitment from AnnieMac in hand, the Gillens renegotiated the buyout agreement with him based on the representation that the sale of Family First to AnnieMac would be used to fund payment to Weikel.  *Id.* ¶¶ 20-26.  In the State Court Action, Weikel now brings claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, fraudulent inducement, unjust enrichment, tortious interference, conspiracy, aiding and abetting, and rescission.  *Id.* ¶¶ 41-92.  He alleges that the Gillens and AnnieMac surreptitiously structured the transaction between AnnieMac and Family First in a concerted effort to avoid paying him.  *Id.* ¶¶ 32-39, 41-92.  All told, Weikel claims in that suit that he is still owed $9 million under his agreement with the Gillens—and, by extension, AnnieMac.  *Id.* ¶¶ 32, 44, 72.

### B.    The Settlement Conference

Returning to this litigation, after roughly a year-and-a-half of discovery, the Court held an all day, in-person settlement conference on December 17, 2024. [Dkts. 72-73, 76.]  The six named plaintiffs and all defendants, each with their own counsel, attended the settlement conference.  [Dkt. 76]; [Dkt. 78-2] ¶ 5-6; [Dkt. 96-3]

¶ 3; [Dkt. 98-1] ¶ 4.[2]  All parties and their counsel actively and vigorously participated in the negotiations.

The principal focus of the settlement conference was the total monetary sum that plaintiffs would receive as consideration for agreeing to dismiss and forever release their individual wage claims in this case.  That issue, in turn, led to extended discussions amongst the defendants as to their individual contributions to a collective "pot" that would, hopefully, aggregate to a number acceptable to plaintiffs.  Ultimately, plaintiffs agreed to accept an aggregate sum from all defendants of ████[3] in satisfaction of their claims, and each defendant agreed to contribute an amount that, collectively, totaled that aggregate amount. The monetary component of the settlement is not in dispute here.

As the monetary negotiations progressed, the parties turned to subsidiary— but important—non-monetary issues.  Relevant here, counsel for AnnieMac asked whether Weikel would agree to release it from any separate claims that Weikel may have relating to the Gillens' purchase of Weikel's interest in Family First. [Dkt. 96-3] ¶ 5; [Dkt. 106-2] ¶¶ 6-7.  In other words, AnnieMac sought Weikel's

---

[2]    An attorney from SRST represented Weikel at the settlement conference; Weikel's attorneys from Bathgate did not attend or participate.  [Dkt. 76]; [Dkt. 78-2] ¶ 5.

[3]    In view of the undisputed confidentiality provision in the settlement agreement, the Court has filed this Opinion and the resulting Order under temporary seal pending proposed redactions by the parties of the settlement agreement's terms.

agreement, as part of the settlement agreement in this case, to release it from his state law claims described above.

Weikel rejected this request as a non-starter. *Id.*; [Dkt. 110] at 7-8. Indeed, he made clear several times throughout the settlement conference—and it is not seriously disputed now—that he would not release his state law claims against the Gillens or AnnieMac as part of a settlement of this case. *Id.*; [Dkt. 96-3] ¶¶ 8, 18; [Dkt. 106-2] ¶¶ 5-6; [Dkt. 106-7]; [Dkt. 111] at 1-2; [Dkt. 112] at 2-3. Accordingly, the Court advised AnnieMac that it should keep those claims entirely divorced from plaintiffs' claims in this case. [Dkt. 96-3] ¶ 5; [Dkt. 110] at 7. Doing so, the parties agreed to the monetary components of the settlement with the understanding that Weikel would preserve his ability to bring his separate state law claims. *See* [Dkt. 96-3] ¶ 5; [Dkt. 98-1] ¶ 15; [Dkt. 106-2] ¶¶ 6-7, 9.[4]

Toward the end of the settlement conference, and after all parties agreed to the monetary components of the settlement, AnnieMac's counsel shared a draft term sheet outlining proposed non-monetary terms of settlement (the "Draft Term Sheet"). [Dkt. 96-3] ¶ 6, Ex. A; [Dkt. 98-1] ¶ 7; [Dkt. 98-4]. The Court and the parties used that document as a starting point from which to finalize and memorialize the essential terms of the settlement agreement. *See* [Dkt. 96-3]

---

[4] The specific provision to which defendants agreed preserves each defendant's ability to bring any non-reimbursement claims they may have against each other. This provision has particular relevance here as it relates to Weikel's desire to preserve his state law claims in the State Court Action. For simplicity's sake, then, the Court at times refers to Weikel's preservation of those claims when discussing the agreed-upon term.

¶¶ 6-8, Ex. A; [Dkt. 98-1] ¶¶ 7-9; [Dkt. 98-4].  Consistent with Section 12 of the Draft Term Sheet, all defendants agreed, amongst themselves in chambers, to mutually release any claims that they may have against each other for reimbursement of their respective contributions to the aggregate settlement pot, and for any costs or fees incurred in this matter.  *Id.*  An exception to that release would enable a party to seek the payment of attorneys' fees and costs incurred in successfully moving to enforce the settlement agreement.  [Dkt. 82] at Tr. 16:4-21. At Weikel's request—and consistent with the earlier discussions just described— defendants agreed to include language in the settlement agreement making clear that none of the defendants agreed to release any other claims that they may have against each other.  [Dkt. 96-3] ¶ 8; [Dkt. 98-1] ¶ 10.  Again, this term had the purpose and effect of preserving Weikel's ability to bring state law claims against the Gillens and AnnieMac arising out of the Gillens' purchase of Weikel's interest in Family First.  Significantly, however, at no point during the settlement conference held on December 17, 2024—either in chambers or on the record—was a waiver or release of defenses to those claims raised, discussed, negotiated, or addressed by any defendant or their counsel.  *See* [Dkt. 96-3] ¶ 18; [Dkt. 98-1] ¶ 21.

Following further discussion regarding issues not relevant here, all parties agreed to memorialize the essential terms of the settlement on the record. The terms placed on the record and agreed to by all parties were as follows:

    i.    An aggregate settlement payment to the six-named and four opt-in plaintiffs totaling ████████, with the Gillens contributing ████████ and Weikel and AnnieMac each contributing ████████ toward that amount.

ii.    A full general release of plaintiffs' claims against defendants relating to their employment with Family First, to the full extent permitted by federal and state law, along with a voluntary dismissal of the claims pending in this case.

iii.    Payment of the settlement amounts within thirty days of receiving the signed settlement agreement from plaintiffs' counsel.

iv.    Plaintiffs' agreement to indemnify defendants from any tax treatment relating to the settlement payment.

v.    Confidentiality of the terms of the settlement, to the full extent permitted by law.

vi.    A representation by plaintiffs' counsel that his firm has no clients with similar wage claims against defendants other than the six named and four opt-in plaintiffs.

vii.    The settlement will be governed by New Jersey law.

viii.    A no-admission-of-liability clause.

ix.    If no formal settlement agreement is executed or if plaintiffs do not receive the full settlement amount, any party may file either a motion to enforce the settlement or opt to proceed with litigation.

x.    If a motion to enforce the settlement is filed, the prevailing party or parties will be entitled to an award of reasonable attorneys' fees, costs, and expenses incurred in connection with the motion

xi.    The Court will retain jurisdiction over the case for purposes of enforcing the settlement.[5]

[Dkt. 82] at Tr. 4:13-5:5, 8:24-16:21.  The Court questioned thoroughly each party

and their respective counsel and gave each an opportunity to add or clarify the

essential terms of the agreed-upon settlement, and all parties agreed to the above

---

[5]    The parties also consented on the record, and later in writing, to the undersigned's jurisdiction to preside over this case for all purposes. *See* [Dkt. 75]; [Dkt. 82] at Tr. 5:6-7:12; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

terms on the record.  *Id.* at Tr. 11:3-22:14; [Dkt. 78-2] ¶ 6; [Dkt. 98-1] ¶ 6;

[Dkt. 106-2] ¶ 9.  Neither Weikel nor his counsel—nor, for that matter, the Court—

included on the record the agreed-upon term that Weikel would preserve his ability

to bring separate state law claims against the Gillens and AnnieMac.

### C.    Aftermath of the Settlement Conference and Attempts to Finalize a Written Settlement Agreement

The parties later learned that, during the settlement conference on

December 17, 2024, Weikel—through counsel at Bathgate—had filed a complaint

against the Gillens and AnnieMac in the Superior Court of New Jersey, Law

Division, Monmouth County, in which Weikel asserted his state law claims.

*See Weikel v. Gillen*, Case No. MON-L-004252-24; [Dkt. 96-3] ¶ 9; [Dkt. 98-1] ¶ 11;

[Dkt. 106-3] ¶ 7; [Dkt. 108] at Ex. A.  Because preserving the state law claims had

been discussed during the settlement conference, the other defendants and the

Court obviously knew that Weikel believed he had actionable claims for money

allegedly owed to him for the Gillens' purchase of his interest in Family First.

*See, e.g.,* [Dkt. 96-3] ¶ 4; [Dkts. 106-4, 106-5].  But neither Weikel nor his counsel

informed the other parties or the Court that Weikel intended to file, or had filed, the

State Court Action that very day, while the settlement conference was ongoing.

[Dkt. 96-3] ¶ 9; [Dkt. 98-1] ¶ 12.

In any event, efforts to formalize and finalize a written settlement agreement

went forward, and on December 23, 2024, counsel for the Gillens circulated the first

draft of the agreement amongst counsel for defendants, including Weikel's counsel

at SRST.  [Dkt. 96-3] ¶ 10, Ex. B; [Dkt. 98-1] ¶ 13; [Dkt. 98-5] at 4.  Later that day,

Weikel's counsel from SRST circulated a revised version of the draft agreement, which proposed language preserving and not releasing Weikel's claims in the State Court Action.  [Dkt. 96-3] ¶ 11, Ex. B; [Dkt. 98-1] ¶¶ 14, 16; [Dkt. 98-5] at 3-4.

Counsel for AnnieMac, Family First, and the Gillens each made further revisions to the draft, including modifications to the release language, and re-circulated a new version of the document shortly thereafter.  [Dkt. 96-3] ¶ 12, Ex. B; [Dkt. 98-1] ¶ 17; [Dkt. 98-5] at 2-3; [Dkt. 113-1].  Weikel's counsel agreed to all of their proposed changes.  [Dkt. 96-3] ¶ 13, Ex. B; [Dkt. 98-1] ¶ 17; [Dkt. 98-5] at 2.  The Gillens' counsel circulated another iteration of the settlement agreement to the parties on December 25, 2025—which Weikel's counsel from SRST again approved—and the parties continued to work towards finalizing the written agreement over the next several days.  [Dkt. 96-3] at 14-17; [Dkt. 98-1] ¶ 18; [Dkt. 98-6].

On January 7, 2025, Weikel's counsel from SRST—at the behest of Weikel's attorneys at Bathgate—proposed additional language to the release provision between defendants.  [Dkt. 78-2] ¶ 9; [Dkt. 83-1] ¶ 9; [Dkt. 96-3] ¶¶ 15, 18, Ex. C; [Dkt. 98-1] ¶¶ 19, 21; [98-7]; [Dkt. 106-2] ¶ 11; [Dkt. 106-3] ¶ 10; [Dkt. 106-8]; [Dkt. 113-2].  That proposed language would have not only expressly preserved Weikel's claims in the State Court Action, but also would have expressly required the Gillens and AnnieMac to waive any defenses to those claims that arose from the parties' participation in the settlement of this case.  *Id.*  The proposal was the first time that such a waiver or release of defenses had been introduced as a potential

term of the settlement agreement. *Id.* In real terms, the proposed waiver would have precluded the Gillens and AnnieMac from asserting defenses of entire controversy or claim or issue preclusion in the State Court Action. Counsel for SRST later informed the parties that Weikel would not sign a written settlement agreement without the other defendants' agreement to waive any such defenses to Weikel's claims in the State Court Action. [Dkt. 96-3] ¶ 16, Ex. D; [Dkt. 98-1] ¶¶ 20, 22; [Dkt. 98-8] at 2.

The other defendants rejected the new proposed waiver language, and the present dispute ensued. [Dkt. 78-2] ¶ 9; [Dkt. 96-3] ¶ 17, Ex. D at 19; [Dkt. 98-1] ¶ 21; [106-2] ¶ 12; [106-3] ¶ 11. A final version of the proposed written settlement agreement was circulated amongst counsel on January 15, 2025 (the "January 15 Draft Settlement Agreement"). [Dkt. 96-3] ¶ 19, Ex. E; [Dkt. 98-1] ¶ 24; [Dkt. 113] at 3; [Dkt. 113-3]. Weikel refused to sign it because it does not include the proposed waiver language. [Dkt. 96-3] ¶ 19; [Dkt. 98-1] ¶¶ 22, 24; [Dkt. 106-2] ¶ 13.

On January 17 and January 24, 2025, Weikel's attorneys from Bathgate entered appearances in this case. [Dkts. 77, 81.] SRST filed a motion to withdraw as Weikel's counsel, citing a breakdown in the attorney-client relationship. [Dkt. 78.] Weikel's attorneys from Bathgate opposed that motion, arguing that SRST failed to introduce facts evidencing a breakdown of the attorney-client relationship and that withdrawal would be prejudicial to the parties in light of the nascent dispute over the settlement. [Dkt. 83.]

11

On January 22, 2025, the parties first notified the Court of the dispute. [Dkt. 113.]  The Court held a video conference on February 19, 2025, during which the Court directed the parties to keep working toward resolving the dispute without Court intervention.  [Dkts. 79, 80, 85.]  On February 28, 2025, the parties reported that AnnieMac, Family First, and Weikel had agreed to revised release language, but that the Gillens had rejected that language.  [Dkts. 86, 87.]  The Court ordered the parties to continue to meet and confer.  [Dkt. 88.]  The parties then reported on March 7, 2025 that AnnieMac and Family First had accepted new language proposed by the Gillens, but that Weikel found that language unacceptable. [Dkt. 89.]  The Court held another video conference on March 24, 2025 in a final attempt to resolve the dispute without motion practice; that effort proved unsuccessful.  [Dkts. 90, 92, 94.]  The Court thereafter granted the parties leave to file motions to enforce the settlement agreement.  [Dkt. 95.]

### D.     The Parties' Motions to Enforce the Settlement Agreement

AnnieMac, the Gillens, Weikel, and plaintiffs each have filed motions to enforce, and Family First has joined AnnieMac's and the Gillens' respective motions.  [Dkts. 96, 98, 102, 106, 107.]  While their arguments differ in some respects, in broad summary, AnnieMac, the Gillens, and plaintiffs all ask the Court to enforce a settlement agreement that does not include defendants' waiver of any defenses to Weikel's claims in the State Court Action.  Weikel, by contrast, asks the Court to enforce a settlement agreement that includes such a waiver.  With that overlay, the Court summarizes the parties' individual arguments.

12

AnnieMac contends that "the parties negotiated, finalized, placed on the record, and confirmed via email the principal terms of a valid and enforceable settlement," and asks the Court to enforce the January 15 Draft Settlement Agreement because it accurately reflects the release language defendants agreed to during the settlement conference. *See* [Dkt. 96-2] at 7-8; [Dkt. 112] at 1; [Dkt. 113-3]. That version of the agreement provides that defendants agree to release each other only from claims seeking reimbursement for the settlement amounts paid to plaintiffs, but not any other claims. *Id.* AnnieMac further requests that the Court deem it a prevailing party for purposes of fee-shifting. [Dkt. 96-2] at 8.

The Gillens argue that the parties negotiated and reached an enforceable settlement during the settlement conference and they emphasize that while Weikel preserved his right to bring any non-reimbursement state law claims, defendants never waived any right to any defenses that they might have to such claims. [Dkt. 104] at 5-6; [Dkt. 111] at 1-2. Accordingly, the Gillens request that the Court enforce the terms of the settlement agreed to at the conference, which preserves all defendants' ability to assert claims against each other—except claims seeking reimbursement for their respective settlement payments—*and* any defenses to those claims. [Dkt. 104] at 5-6; [Dkt. 111] at 3. The Gillens further request that Weikel "be compelled to pay all parties' fees relating to the motions to enforce the settlement." [Dkt. 104] at 6.

13

Plaintiffs, for their part, argue that "the essential and material terms of the settlement" were recited and agreed to on the record during the settlement conference, and that defendants' release provision is "a single non-material paragraph" that "relates to a separate business dispute among [d]efendants" and "cannot impede the enforcement" of the settlement in this matter.  [Dkt. 108] at 11, 13.  Plaintiffs therefore contend that the release language in dispute is not an essential term of the agreement in any respect, and they therefore urge the Court to adopt the terms of the settlement reached and recorded on the record regardless whether defendants' release language preserved Weikel's state law claims or included a waiver of defenses.  *Id.* at 13-14.

Taking the opposite view, Weikel argues that he agreed to settle this matter on the condition that all claims that he "anticipated bringing against the other [d]efendants were preserved *and would not be adversely affected* by having participated in the [s]ettlement."  [Dkt. 106] at 13 (emphasis added); *accord* [Dkt. 110] at 13.  Accordingly, Weikel asks the Court to "enter an Order enforcing the settlement agreement consistent with [his] understanding that an entire controversy defense cannot be asserted against [him] in the pending State Court litigation," or alternatively, "find that there is no meeting of minds and declare the settlement agreement null and void."  [Dkt. 106] at 5; [Dkt. 110] at 14.

## II.    LEGAL STANDARDS

"State law governs the construction and enforcement of settlement

agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*,

975 F. Supp. 342, 348-49 (D.N.J. 1996).[6]  In New Jersey, there exists a strong public

policy in favor of enforcing settlement agreements "based upon the notion that the

parties to a dispute are in the best position to determine how to resolve a contested

matter in a way which is least disadvantageous to everyone." *Brundage v. Est. of*

*Carambio*, 195 N.J. 575, 601 (2008) (quotation omitted).  Accordingly, "courts will

strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub.*

*Advoc. v. N.J. Bd. of Pub. Utils.,* 206 N.J. Super. 523, 528 (App. Div. 1985).

"Under the law governing the enforcement of a settlement agreement, a

settlement agreement between parties to a lawsuit is a contract like any other

contract." *Philadelphia Indem. Ins. Co. v. Mar-Bridge Enters., Inc.*, Civ. No.

18-15205 (DEA), 2020 WL 13155758, at *1 (D.N.J. Dec. 18, 2020), *report and*

*recommendation adopted*, 2021 WL 7868442 (D.N.J. Jan. 13, 2021) (citation

omitted); *see also Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983).

Accordingly, "the construction and enforcement of settlement agreements is

governed by contract principles." *Prods. For Surgery, Inc. v. Shelhigh, Inc.*,

Civ. No. 06-3565 (WJM), 2008 WL 199463, at *1 (D.N.J. Jan. 22, 2008) (citing

*Thompson v. City of Atl. City,* 190 N.J. 359, 379 (2007); *Nolan ex rel. Nolan v.*

---

[6]    Moreover, one of the undisputed terms of the settlement agreement provides
that the settlement will be governed by New Jersey law.  [Dkt. 82] at Tr. 10:18.

*Lee Ho,* 120 N.J. 465, 472 (1990)).  "The party seeking to enforce the alleged

settlement agreement has the burden of proving the existence of the agreement

under contract law."  *Natale v. East Coast Salon Servs., Inc.*, Civ. No. 13-1254

(NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016) (citing *U.S. v. Lightman*,

988 F. Supp. 448, 458 (D.N.J. 1997)).

     An enforceable contract exists where the parties agree on essential terms,

which are sufficiently definite that each party's obligations can be ascertained with

reasonable certainty, and the parties manifest an intention to be bound by those

terms.  *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).  Objective

manifestations of intent are controlling in determining whether there was a

meeting of minds and intent to be bound.  *See Hagrish v. Olson*, 254 N.J. Super.

133, 138 (App. Div. 1992) ("A contracting party is bound by the apparent intention

he or she outwardly manifests to the other party.  It is immaterial that he or she

has a different, secret intention from that outwardly manifested." (citation

omitted)).  When "the parties do not agree on one or more essential terms, however,

courts generally hold that the agreement is unenforceable."  *Natale*, 2016 WL

659722, at *2 (citing *Lightman*, 988 F. Supp. at 458).  Courts should thus "treat a

motion to enforce settlement under the same standard as a motion for summary

judgment because the central issue is whether there is any disputed issue of

material fact as to the validity of the settlement agreement."  *Gonzalez v. Pace

Motor Lines, Inc.*, Civ. No. 19-21202 (JBC), 2022 WL 2439859, at *3 (D.N.J. Feb. 22,

2022), *report and recommendation adopted*, 2022 WL 2439860 (D.N.J. Mar. 9, 2022) (citations omitted).

## III.  DISCUSSION

All parties ask the Court to enforce some version of a settlement agreement. The issue is what terms are included in the agreement to be enforced.  For the reasons set forth below, the Court concludes that the enforceable settlement agreement includes a preservation of all non-reimbursement claims that defendants have or may have against each other but does not include a waiver or release of any available defenses to those claims.[7]

### A.    The Terms of the Settlement Agreement

In evaluating whether to enforce a settlement, "the Court considers the record evidence and determines whether there is a genuine dispute of material fact

---

[7]    Because the Court has not yet dismissed the case and one of the undisputed terms of the enforceable settlement agreement provides that the Court will retain jurisdiction over the case for purposes of enforcing the settlement, the Court has jurisdiction to enforce the settlement agreement between the parties. *See Wong v. Ford*, Civ. No. 05-3501 (TJB), 2008 WL 11511395, at *1 (D.N.J. Feb. 28, 2008) (citations omitted); *Philadelphia Indem. Ins. Co.*, 2020 WL 13155758, at *2; [Dkt. 82] at Tr. 9:11-15.  Additionally, although no party requested an evidentiary hearing, the Court is mindful that "[w]here material facts concerning the existence or terms of an agreement are in dispute, the parties must be allowed [such a] hearing." *Tedesco Mfg. Co. v. Honeywell Int'l Inc.*, 371 F. App'x 316, 319 (3d Cir. 2010) (not precedential) (emphasis and internal quotations omitted).  Here, however, an evidentiary hearing is not necessary because there are not any material facts in dispute—the parties agree on what transpired; the disagreement regards the legal conclusions that follow from those facts.  Moreover, the undersigned's personal involvement in the settlement conference and subsequent telephone conferences on this issue, the parties' direct participation in settlement discussions with counsel and the Court, and the numerous affidavits, declarations, and other relevant evidence submitted as exhibits to the parties' respective motions all obviate the need for an evidentiary hearing in this case.  *Alexander v. N.J. Dep't of Transp.*, Civ. No. 11-3348 (PGS), 2014 WL 5823168, at *5 (D.N.J. Nov. 10, 2014).

17

regarding the formation of an enforceable contract." *JPMorgan Chase Bank, N.A. v. CMA Trading, Inc.*, Civ. No. 19-130 (LDW), 2020 WL 4043954, at *2 (D.N.J. July 2, 2020), *report and recommendation adopted,* 2020 WL 4040801 (D.N.J. July 17, 2020).  Settlement agreements are enforceable only if the parties "agree on essential terms, and manifest an intention to be bound by those terms." *Garde-Hill v. Cadbury at Cherry Hill, Inc.*, Civ. No. 15-8865 (NLH), 2018 WL 2192706, at *2 (D.N.J. May 14, 2018) (quotation omitted).  "An agreement to settle a [lawsuit], voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Zong v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 632 F. App'x 692, 694 (3d Cir. 2015) (not precedential) (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1971) (per curiam)).  Indeed, the Third Circuit "has long recognized a federal district court's equitable jurisdiction to enforce settlement agreements based upon oral representations made by the litigants before it." *Id.* (citations omitted).

Moreover, under New Jersey contract law, "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993) (quoting *Bistricer v. Bistricer*, 231 N.J. Super. 143, 144-45 (Ch. Div. 1987)).  Thus, "[a] settlement agreement should be enforced if the parties orally agree on the essential terms while still contemplating the execution of a formal document memorializing their

18

undertaking." *Am. Gen. Life Ins. Co. v. White*, Civ. No. 21-17361 (ESK), 2022 WL

19558025, at *4 (D.N.J. Nov. 21, 2022), *report and recommendation adopted*,

2023 WL 3901420 (D.N.J. June 8, 2023) (citing *Lightman*, 988 F. Supp. at 459;

*McDonnell v. Engine Distribs.*, Civ. No. 03-01999 (JHR), 2007 WL 2814628, at *3

(D.N.J. Sept. 24, 2007), *aff'd*, 314 F. App'x 509 (3d Cir. 2009) (not precedential);

*Kennedy v. Samsung Elecs. Am., Inc.*, Civ. No. 14-04987 (WJM), 2018 WL 2296702,

at *5 (D.N.J. May 21, 2018)).

Here, the parties do not dispute that a settlement agreement can be enforced

even without a formal written agreement, so long as there is agreement on the

essential terms.  Nor do the parties dispute that they reached agreement on certain

essential terms of settlement, which were placed on the record at the conclusion of

the settlement conference.  *See* [Dkt. 78-2] ¶ 6; [Dkt. 82]; [Dkt. 96-2] at 2-3, 7-8;

[Dkt. 98-1] ¶ 6; [Dkt. 104] at 1-2, 6; [Dkt. 106-2] ¶ 9; [Dkt. 108] at 6-8, 13.  But the

parties do dispute whether Weikel's preservation of his claims in the State Court

Action carried with it a release or waiver of certain defenses that the Gillens and

AnnieMac may have to those claims.  The parties also dispute whether any

disagreement as to that term vitiates the settlement agreement.

Accordingly, the Court's analysis proceeds by addressing the following issues:

(i) whether the settlement agreement included a term that preserved Weikel's

ability to assert his state law claims in the State Court Action; (ii) whether the

settlement agreement also included defendants' agreement to waive or release

19

certain defenses to those claims; and (iii) which version of the settlement agreement to enforce. [8]

1.      **The Settlement Agreement Preserves Defendants' Right to Bring Non-Reimbursement Claims Against Each Other, and Thus Preserves Weikel's Right to Bring His State Law Claims.**

Plaintiffs argue that Weikel's preservation of his state law claims and the putative waiver of any defenses to them are not material terms of the settlement agreement because they "relate[] to a separate business dispute among [d]efendants, which has nothing to do with [p]laintiffs' claim for overtime wages" and were not placed on the record at the settlement conference.  [Dkt. 108] at 13-14 (citing *Zacharczuk v. Rego Trading, Inc.*, Civ. No. 19-20022 (LDW), 2022 WL 4358077, at *5 (D.N.J. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 4356937 (D.N.J. Sept. 20, 2022) (explaining that "[i]f a representation from [a party] on a particular point [i]s an essential term of settlement, then it need[s] to be expressed on the record as part of the settlement."); *Schaffer's Auto., LLC v. Caernarvon Twp.*, Civ. No. 22-03353, 2023 WL 9325276, at *4 (E.D. Pa. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 219256 (E.D. Pa. Jan. 19, 2024) (same)).  Plaintiffs thus contend that because defendants only

---

[8]      At times, the parties frame the dispute in terms of the settlement agreement's overall release provision.  That is, the parties sometimes describe the dispute generally as whether the overall release is or is not an essential term of the parties' settlement agreement.  *See generally* [Dkts. 96, 98, 106, 108].  This is somewhat imprecise.  The real issues are (i) whether, as part of the settlement agreement in this case, Weikel preserved his state law claims asserted in the State Court Action, and (ii) whether defendants agreed to waive or release any defenses to those claims.  The Court analyzes these issues below in those terms.

discussed the preservation of Weikel's state law claims in chambers but did not place that term on the record, the preservation of his state law claims is not an essential term and thus "cannot impede the enforcement of th[e] settlement." [Dkt. 108] at 11-14.

Weikel, by contrast, argues that preserving his ability to pursue his state law claims was an essential term because he only agreed to settle on the condition that his anticipated claims against the other defendants "were preserved and would not be adversely affected by having participated in the [s]ettlement." [Dkt. 106-1] at 13. Weikel therefore submits that preserving his state law claims was a fundamental condition for his agreement to enter into the settlement agreement, and therefore was an essential term. [Dkt. 110] at 14.

Traditional contract law principles inform this debate. They provide that "a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms." *Shernoff v. Hewlett-Packard Co.*, Civ. No. 04-4390 (MCA), 2006 WL 3511188, at *3 (D.N.J. July 17, 2006), *report and recommendation adopted*, 2006 WL 3497798 (D.N.J. Dec. 4, 2006), *aff'd*, 302 F. App'x 83 (3d Cir. 2008) (not precedential) (citations omitted). Essential terms are those that go to the "heart of the alleged agreement." *Satellite Ent. Ctr., Inc. v. Keaton*, 347 N.J. Super. 268, 277 (App. Div. 2002). "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." *Hagrish*, 254 N.J. Super. at 138 (quoting *Berg Agency v. Sleepworld–Willingboro, Inc.*, 136 N.J. Super. 369,

377 (App. Div. 1975)).  Accordingly, "when the essential parts of a contract are spelled out, a court will not refuse to enforce that contract because some of its less critical terms have not been articulated." *Satellite*, 347 N.J. Super. at 276 (citations omitted).

Applying these principles, both sides have a point.  On one hand, it is not seriously in dispute that Weikel would not have agreed to contribute to the settlement if it resulted in his waiver or release of his state law claims against the Gillens and AnnieMac.  *See, e.g.,* [Dkt. 96-3] ¶ 5, 8, 18; [Dkt. 106-2] ¶ 5-7; [Dkt. 106-7]; [Dkt. 110] at 7-8; [Dkt. 111] at 1-2; [Dkt. 112] at 2-3.  That issue became a significant discussion point during the settlement conference—so much so that Weikel quickly and forcefully rejected AnnieMac's question whether he would release them from those claims in consideration for its contribution to the settlement—and the Court encouraged defendants to keep the state law issues divorced from resolution of this action.  [Dkt. 96-2] at 5; [Dkt. 96-3] ¶ 5; [Dkt. 106-2] ¶¶ 6-7; [Dkt. 110] at 7-8.  Accordingly, it is reasonable to view Weikel's preservation of his state law claims as an "essential" term of the settlement agreement, in the sense that he would not have settled without it.  And without Weikel's contribution, there would almost certainly have been an inadequate pool of money to entice plaintiffs to release their federal and state wage-and-hour claims in this case.

22

In that sense, then, without a preservation of Weikel's state law claims, there likely would have been no settlement at all.[9]

On the other hand, preservation of Weikel's state law claims could be viewed as not essential to the overall agreement to settle the case, because it was not "necessary to produce a complete transaction." *Straus Assocs. II v. Berman*, Case No. A-5578-15T3, 2017 WL 4781699, at *4 (N.J. Super. Ct. App. Div. Oct. 24, 2017) (distinguishing between "terms essential to form a contract" and terms "subjectively deemed essential in order to settle") (citing *Berg*, 136 N.J. Super. 369, 375 (App. Div. 1975)). The agreement reached on the record at the settlement conference "contain[ed] all of the essential terms for a settlement," including plaintiffs' agreement to release all claims relating to their employment with Family First in exchange for payments by each of the defendants, the financial obligations of the parties, settlement amounts, and the timeline, among other things, so "there [we]re no missing terms essential to complete the [transaction]." *Id.*

Moreover, plaintiffs are correct that, following a thorough colloquy with all parties and their counsel, neither Weikel nor his attorney stated on the record that the essential terms of the settlement agreement included a preservation of his state law claims. [Dkt. 108] at 13. The Court appreciates and generally agrees that if a party views a term as essential to a settlement, then it should take care to express

---

[9]    For that reason, the Court rejects AnnieMac's separate argument that the release at issue here is not essential as a matter of law because the scope of release simply "relates to the 'implementation' of the agreement rather than its 'essential terms.'" [Dkt. 96-2] at 7-8 (citing *McDonnell v. Engine Distribs.*, 2007 WL 2814628, at *7-8).

that term on the record as part of the agreement. *See Zacharczuk*, 2022 WL 4358077, at \*5; *Schaffer's Auto.*, 2023 WL 9325276, at \*4. By that standard, "it was incumbent upon [Weikel] to express [the preservation of his state law claims] on the record" if he deemed it to be an essential term. *Schaffer's Auto.*, 2023 WL 9325276, at \*4. He did not do so, nor did he—or any other party, for that matter—express that the terms of the settlement agreement were incomplete before agreeing, on the record and unequivocally, to settle the case. [Dkt. 82] at Tr. 11:3-22:14.

Faced with these conflicting lines of argument and appreciating the overall context, the Court generally views Weikel's argument on this issue as more persuasive. But the debate is academic, and the Court need not conclusively resolve it. Essential or not, all parties agree that Weikel sought to preserve his state law claims and that defendants were agreeable, and no party asks the Court to enforce a settlement agreement under which Weikel is found to have affirmatively released the claims he now asserts in the State Court Action. [Dkt. 96-2] at 7-8; [Dkt. 96-3] ¶¶ 5, 8, 18; [Dkt. 98-1] ¶ 10; [Dkt. 104] at 6; [Dkt. 106-1] at 7, 13; [Dkt. 106-2] ¶¶ 5-6, 9; [Dkt. 110] at 6-8, 13-14; [Dkt. 111] at 1-2; [Dkt. 112] at 2-3. Accordingly, there is no genuine dispute that Weikel intended to and did preserve those separate claims, so a provision to that effect will be part of the settlement agreement that the Court enforces. *See id.*; *cf. Comerata v. Chaumont, Inc.*, 52 N.J. Super. 299, 305 (App. Div. 1958) ("[T]he fact that parties who are in agreement upon all necessary terms may contemplate that a formal agreement yet to be prepared will contain such additional terms as are later agreed upon will not affect the subsistence of the

contract as to those terms already unqualifiedly agreed to and intended to be binding.").

> ### 2. The Settlement Agreement Does Not Also Include a Waiver or Release of Defenses to Weikel's State Law Claims.

The Court has just concluded that Weikel preserved his ability to bring his state law claims in the State Court Action. The crux of the present dispute is whether defendants *also* agreed to waive or release any defenses that they may have to those claims, including the defenses of entire controversy and claim or issue preclusion. The Court turns now to that question.[10]

AnnieMac and the Gillens, joined by Family First, argue that defendants agreed to a provision preserving each defendant's ability to bring claims against each other (other than claims seeking reimbursement for the settlement payments or costs and fees incurred in this case), but did not agree to waive any defenses they may have to such claims. [Dkt. 96-2] at 7-8; [Dkt. 104] at 5-6; [Dkt. 111] at 1-2; [Dkt. 112] at 2-3. AnnieMac and the Gillens assert that Weikel's position at the settlement conference was "that he would not expressly release his other claims against the Gillens and AnnieMac as part of a settlement of this case," but that "[e]xpressly preserving Weikel's right to file other claims [ ] is vastly different than

---

[10]    At the outset, the Court notes its deep skepticism that the entire controversy and preclusion defenses that AnnieMac and the Gillens wish to assert have any merit. As described above, *see supra* at 3-4, Weikel's separate state law claims neither relate to nor arise out of plaintiffs' wage and hour claims asserted in this case, so it is difficult to see how Weikel could have been required as a matter of law to bring his claims against his co-defendants in this action. In any event, at issue here is not the viability of those defenses, but whether defendants have waived their right to assert them.

the co-defendants expressly waiving defenses to those claims." [Dkt. 112] at 2-3; *see also* [Dkt. 111] at 1-2. Indeed, AnnieMac and the Gillens submit that Weikel never asked defendants to waive any defenses to his claims, and that "Weikel can point to nothing in a[] transcript, writing, term sheet or discussion that the [p]arties ever, at any time, discussed or agreed to waive any defenses in any other action brought against them." [Dkt. 111] at 1-2; *see also* [Dkt. 112] at 3. Accordingly, AnnieMac and the Gillens argue that Weikel's proposal is an improper *post hac* attempt to make a material addition to the settlement agreement that the parties never contemplated. *Id.* at 2.[11]

Weikel, by contrast, argues that he only agreed to settle the litigation on the condition that all claims he anticipated bringing against the other defendants would be preserved, which necessarily encompassed the other defendants' agreement to waive entire controversy and other preclusion defenses against him in the State Court Action. [Dkt. 106-1] at 13; [Dkt. 110] at 12-15. He further asserts that "there are clear objective manifestations of [his] intent to enter into the agreement if and only if his state law claims were preserved," and that "[t]he attendant and surrounding circumstances make it apparent and obvious that [he] intended to

---

[11]    For their part, plaintiffs similarly argue that the Court should enforce the settlement that the parties agreed to on the record regardless of the present dispute. In any event, they argue that Weikel's objective manifestations at the settlement conference do not establish that the release provision included a waiver of preclusion and entire controversy defenses, and that Weikel's purported subjective understanding of defendants' agreement cannot form a basis to enforce the settlement agreement with such a waiver, or to render the settlement void on the grounds that there was no meeting of the minds. [Dkt. 108] at 11-14 (citing *Zacharczuk*, 2022 WL 4358077, at *3-5).

preserve his claims against the [d]efendants **and** that the entire controversy doctrine could not be asserted as a defense that could bar [his] [s]tate [c]ourt claims." [Dkt. 110] at 13; *see also* [Dkt. 106-1] at 13 (emphasis added). In support of this position, Weikel points to an email sent on December 16, 2024 by his attorneys at Bathgate to Weikel and his counsel at SRST in advance of the settlement conference. [Dkt. 106-1] at 6-7; [Dkt. 106-2] at ¶ 4; [Dkt. 106-3] at ¶ 4; [Dkt. 106-6]; [Dkt. 110] at 8. That email emphasized that any settlement of this case must

> expressly include a reservation of rights that provides that any claims or rights that Mr. Weikel may have against or involving the co-defendants (other than as to his contributing monetarily to the settlement) shall be reserved and preserved, and any such claims that may be pursued by Mr. Weikel shall not be subject to the Entire Controversy Doctrine or any other claim-preclusion rule or doctrine.

[Dkt. 106-1] at 6-7; [Dkt. 106-3] at ¶ 4; [Dkt. 106-6]. Given the intent reflected in this internal email, Weikel alternatively submits that the Court should find that there was "no meeting of the minds and declare the settlement null and void" if it holds that the waiver of preclusion defenses was not part of the settlement agreement. [Dkt. 110] at 14.

Under New Jersey law, "there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 319 (2019) (citation omitted). A meeting of the minds "signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement." *Hoffman v. Supplements Togo Mgmt., LLC*, 419 N.J. Super. 596, 606 (App. Div. 2011). "Where there is a

misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds, and therefore no contract." *Pacific Alliance Grp. Ltd. v. Pure Energy Corp.,* Civ. No. 02-04216 (DRD), 2006 WL 166470, at * 3 (D.N.J. Jan. 23, 2006); *see also D.R. ex rel. M.R. v. East Brunswick Bd. of Educ.,* 838 F. Supp. 184, 191-92 (D.N.J. 1993) ("[A] contract cannot be made when there has been no common understanding and mutual assent to the terms of a contract."); *Big M, Inc. v. Dryden Advisory Grp.*, Civ. No. 08-3567 (KSH), 2009 WL 1905106, at *22 (D.N.J. Jun. 30, 2009) (no meeting of minds where the parties attached different meaning to a contract term). In addition to a meeting of the minds, the parties also must have manifested an intention to be bound by terms that are sufficiently definite to have entered into a binding contract. *Weichert*, 128 N.J. at 435.

As noted above, in determining whether there was a meeting of the minds and intent to be bound, objective manifestations of intent are controlling. *See Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000); *Leitner v. Braen,* 51 N.J. Super. 31, 38 (App. Div. 1958) ("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, *i.e.*, their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former." (citation omitted)). Thus, "[w]here a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement." *Trian Grp., Ltd. P'ship v. Accident & Cas. Ins. Co. of Winterthur*, Civ. No. 98-1026 (GEB),

2006 WL 1784310 (D.N.J. June 26, 2006) (quoting *Lightman*, 988 F. Supp. at 463); *see also Hagrish*, 254 N.J. Super. at 138 ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party," even if they may have had "a different, secret intention from that outwardly manifested." (citation omitted)).

On a full review of the record, the Court concludes that the parties agreed to preserve each defendant's ability to bring claims against each other (other than claims seeking reimbursement for the settlement payments and costs or fees incurred in this case), but did not agree to waive any entire controversy, preclusion, or other defenses that they may have to such claims.  The Court therefore concludes that the settlement agreement to be enforced does not contain a provision under which the Gillens, AnnieMac, or Family First waived or released any defenses to the claims that Weikel asserts in the State Court Action.

Weikel argues that he only agreed to settle the litigation "under the condition that all claims that [he] anticipated bringing against the other [d]efendants were preserved and would not be adversely affected by having participated in the [s]ettlement."  [Dkt. 106-1] at 13; *see also* [Dkt. 106-7]; [Dkt. 110] at 13. As explained above, Weikel made this position clear throughout the conference by repeatedly expressing his desire to preserve his right to assert his state law claims; indeed, the other defendants agreed to incorporate language into the written settlement agreement to that effect.  [Dkt. 96-3] ¶¶ 5, 8, 18; [Dkt. 98-1] ¶ 10; [Dkt. 106-2] ¶¶ 5-6, 9; [Dkt. 106-7]; [Dkt. 110] at 7-8; [Dkt. 111] at 1-2; [Dkt. 112]

at 2-3.  Weikel himself emphasizes that "[t]here is no legitimate dispute that the parties agreed that [he] was preserving his claims against [defendants]," and consistently refers to his preservation of claims as a "term[] agreed upon at the December 17, 2024 settlement conference."  [Dkt. 106-1] at 13; [106-2] ¶ 9; [Dkt. 106-3] ¶¶ 10, 12, 13; [Dkt. 110] at 13.

Likewise, the other parties' submissions also make clear that defendants agreed to their own mutual release of claims for reimbursement of their respective settlement costs, fees, or payments, and additionally agreed to include language in the settlement agreement providing that none of the defendants were releasing any other claims they had or may have had against each other.  [Dkt. 96-2] at 7-8; [Dkt. 96-3] ¶ 8; [Dkt. 98-1] ¶¶ 9-10; [Dkt. 104] at 5-6; [Dkt. 111] at 1-2; [Dkt. 112] at 2-3.  This understanding is consistent with the undersigned's recollection of the negotiations during the settlement conference.  But preserving one's ability to assert a claim is not the same thing as obtaining a waiver or release of defenses to that claim; indeed, it is very different.  *See IVF Inv. Co., LLC v. Est. of Natofsky*, Case No. A-4136-10T1, 2012 WL 1813429, at *8 (N.J. Super. Ct. App. Div. May 21, 2012) ("It is a principle of contract interpretation that a release of 'any and all claims, rights, actions and causes of action of any kind' waives only 'those types of things' specifically mentioned." (quoting *Isetts v. Borough of Roseland,* 364 N.J. Super. 247, 255-56 (App. Div. 2003)).

During the settlement conference, Weikel did *not* condition his agreement to participate in the settlement on defendants' agreement to waive or release any

defenses that they may have to his state law claims. The Court agrees with AnnieMac that "[e]xpressly preserving Weikel's right to file other claims [ ] is vastly different than the co-defendants expressly waiving defenses to those claims." [Dkt. 112] at 3. Although Weikel now contends that he "advised the Court and counsel at least three times that [he] would only settle if it did not hurt [his] anticipated state court case," [Dkt. 106-2] ¶ 5, neither the parties nor their counsel discussed in any way defendants' potential waiver of defenses at the settlement conference.[12]

Indeed, the notion of a waiver or release of defenses was never raised at the settlement conference and was not mentioned until Weikel's counsel from Bathgate introduced it several weeks after the parties began their attempts to finalize a written settlement agreement. *See supra* at 4-12. The internal strategic email communication before the settlement conference from Weikel's counsel at Bathgate to Weikel and his counsel at SRST, [Dkt. 106-1] at 6-7; [Dkt. 106-3] at ¶ 4; [Dkt. 106-6], was never outwardly expressed at the settlement conference. Rather, Weikel's and his counsel's objective, outward manifestations during the settlement conference demonstrate his intent to preserve his own claims, not for defendants to waive any defenses to them. Nothing in any of the parties' declarations, briefs,

---

[12]    By reciting Weikel's present assertion above—that he expressed his belief that the settlement would not "hurt" his state law claims—the Court does not necessarily agree that he expressed his intent in those specific terms. But even if he did, a desire not to "hurt" his state law claims objectively reflects a desire to preserve his ability to bring them, not an intent for the other defendants to release their ability to assert defenses to them.

exhibits, or discussions that the Court observed at the conference supports Weikel's argument that he manifested an objective intention, or that defendants agreed, to include a waiver or release of defenses as a term of the settlement.  *See* [Dkts. 96, 98, 104, 106, 108, 110, 111, 112.].

Neither Weikel nor his counsel assert in their motion papers that they asked the other defendants to waive any defenses, and they have submitted no documentation or evidence demonstrating that they did make such a request. *See* [Dkts. 78, 106, 110.]  Instead, Weikel argues that he "underst[ood]" the defendants' agreement to preserve non-reimbursement claims to include a waiver of defenses.  [Dkt. 106-1] at 5-6; [Dkt. 106-2] ¶¶ 9, 11; [Dkt. 106-3] ¶¶ 10, 12-13; [Dkt. 110] at 8, 12-13.  Even assuming, however, that Weikel genuinely and subjectively believed that defendants' agreement to allow him to preserve his claims necessarily also included an agreement to waive entire controversy and other preclusion defenses, that would not change the outcome here.

The parties' objective, outwardly manifested intent governs, and a contracting party is bound by the intention that he or she outwardly manifests to the other parties.  *Hagrish*, 254 N.J. Super. at 138.  Here, Weikel's objective, outward manifestations reflected an intent to preserve his state law claims, but not a separate intent that defendants also waive potential defenses to such claims. That is a separate matter, and one that neither Weikel nor his counsel expressed a desire to include until after the parties had already assented to a binding agreement.  Weikel's apparent belief—or even his subjective intention—that the

agreement would include a waiver of defenses was "a different, secret intention from that outwardly manifested." *Id.*; *see also Brawer,* 329 N.J. Super. at 283. There was thus agreement *only* to preserve all non-reimbursement claims notwithstanding Weikel's apparent undisclosed intention for his co-defendants *also* to waive defenses to the State Court Action. *Perez v. Verizon*, Civ. No. 04-5247 (JAP), 2006 WL 1796899, at *4 (D.N.J. June 28, 2006) (finding that party's "assent to the essential terms of [an] agreement was binding" and therefore that their "subsequent disagreement with certain of the terms in the proposed settlement agreement d[id] not justify a finding that the settlement [wa]s unenforceable.").

For the same reasons, the Court rejects Weikel's argument that his subjective belief that the agreement included a waiver of defenses means that there was no meeting of the minds and therefore no enforceable agreement. Again, Weikel's objective, outward manifestation reflected his agreement that the settlement included only a preservation of his own claims. If he intended to include something else, he or his counsel should have been explicit. That Weikel now regrets his failure to express his desire for the other defendants to waive defenses as part of their agreement to preserve non-reimbursement claims "is not a reason for this Court to refuse to enforce the settlement reached in this matter." *MedPointe Healthcare, Inc. v. Kozachuk*, Civ. No. 04-2019 (TJB), 2009 WL 540680, at *5

(D.N.J. Mar. 4, 2009), *report and recommendation adopted*, 2009 WL 1662226

(D.N.J. June 15, 2009), *aff'd*, 373 F. App'x 62 (Fed. Cir. 2010).[13]

Accordingly, while there is no dispute that Weikel and the other defendants specifically preserved the right to bring non-settlement reimbursement claims against each other, the record is devoid of any evidence that they ever objectively and outwardly manifested an intention that defendants also would waive any defenses they may have to such claims. Belatedly including a waiver of defenses as part of defendants' agreement would be an improper, material addition to the settlement agreement that the parties never discussed or contemplated at the time that they agreed to settle.

---

[13] Weikel seems to insinuate that his agreement to settle was not fully informed, or somehow conditional, because he was unable to speak with his attorneys at Bathgate during the settlement conference and neither he nor his attorneys saw the written settlement draft until January 7, 2025. [Dkt. 106-1] at 7-8; [Dkt. 106-2] ¶¶ 8, 10-11; [Dkt. 106-3] ¶¶ 8-9; [Dkt. 110] at 8. The Court rejects both assertions. As an initial matter, "[t]he settlement was not contingent on a written settlement agreement even though it is true the parties contemplated a written agreement would be signed," so the fact that Weikel and his attorneys at Bathgate apparently did not see the written draft until January 7 is irrelevant. *Vandergrift v. Pennsauken Sch. Dist.*, Civ. No. 12-7646 (JS), 2017 WL 6566139, at *5, 7 (D.N.J. Dec. 22, 2017) (citation omitted). Moreover, the Court engaged in extensive colloquy of Weikel and his counsel to make sure that he fully understood the terms of the agreement and that he intended to settle the matter. *See* [Dkt. 82] at Tr. 8:3-10, 12:13-13:2, 14:11-15, 15:11-20, 16:4-17, 27:1-9. Weikel indicated that he "had an adequate opportunity to discuss with counsel" the proposed settlement terms, and that he "agree[d] with them." *Id.* at Tr. 12:13-13:2. On this record, the Court finds that Weikel understood the settlement terms and the implications of settling, and intended—and in fact agreed—to settle this matter on the terms outlined above. *See MedPointe Healthcare,* 2009 WL 540680, at *4-5 (enforcing oral settlement agreement over party's objection that "he did not understand the [settlement] proceeding and did not intend to settle th[e] matter" where settlement conference and on-the-record exchange made clear that party understood the proceeding and intended to settle).

For these reasons, the Court concludes that the settlement agreement to be enforced does not include a provision under which the Gillens, AnnieMac, or Family First waived or released any defenses to the separate claims that Weikel asserts in the State Court Action—including defenses of entire controversy and claim or issue preclusion. Whatever the merit of those defenses, the settlement agreement here does not preclude defendants from asserting them in the State Court Action.

### 3. The Court Will Enforce the Settlement Agreement Reached During the Settlement Conference.

The Court next must determine which version of the settlement to enforce. Because the Court concludes that defendants' agreement to preserve non-reimbursement claims was a component of the settlement and did not include a waiver of defenses, the only question is whether the Court should enforce the terms that the parties orally agreed to at the settlement conference, or those in the written, unexecuted January 15 Draft Settlement Agreement.[14]  AnnieMac asks the Court to enforce the January 15 Draft Settlement Agreement, which contains the release that preserves defendants' right to bring non-reimbursement claims against each other (but not a waiver of defenses).  [Dkt. 96-1] at 2; [Dkt. 96-2]; [Dkt. 113-3]. On the other hand, the Gillens seek to enforce the terms of the settlement agreed to on the record at the conference and defendants' agreement to preserve

---

[14]    Weikel argues that the Court should "enforce the settlement agreement with the express term that the [d]efendants are prohibited from asserting an entire controversy defense against [him] in the pending State Court litigation." [Dkt. 106-1] at 13-14; *accord* [Dkt. 110] at 14.  In light of the Court's conclusion that the parties did not agree to waive any defenses they may have to Weikel's state law claims, the Court denies Weikel's request in this respect.

non-reimbursement claims agreed to in chambers.  [Dkt. 98-2]; [Dkt. 104] at 6; [Dkt. 111] at 3.

"'[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of the contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking.'" *Bistricer*, 231 N.J. Super. at 147 (quoting *Pascarella*, 190 N.J. Super. at 126).  "'So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound.'" *Id.* at 148 (quoting *Berg*, 136 N.J. Super. at 377).  Accordingly, although courts will not enforce a settlement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms, a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect." *Atlas Sys., Inc. v. Reddy*, Civ. No. 16-5381 (TJB), 2018 WL 11244845, at *4 (D.N.J. June 26, 2018), *report and recommendation adopted,* 2020 WL 7251154 (D.N.J. Dec. 4, 2020) (cleaned up).

Applying these principles, the parties reached an enforceable settlement agreement at the settlement conference.  After spending a full day with the parties negotiating the terms of the settlement, the Court went on the record with the parties to confirm that the matter was settled and to place essential terms of the settlement on the record.  [Dkt. 82.]  Each of the parties and their counsel admitted

in open court that the parties had settled, and they agreed on the material terms of the agreement on the record. *Id.* at Tr. 11:3-22:14; [Dkt. 78-2] ¶ 6; [Dkt. 98-1] ¶ 6; [Dkt. 106-2] ¶ 9. "That alone shows that the parties intended to be bound by their agreed-upon settlement." *Ashkenazie v. Trans Union, LLC*, Civ. No. 20-11924 (MAS), 2021 WL 4462044, at *4 (D.N.J. Sept. 29, 2021). Moreover, although it was not placed on the record, the Court has recounted above that all defendants agree that Weikel has preserved his right to pursue the state law claims in the State Court Action. *See supra* at 24-25, 29-34; *see also Jennings v. Reed*, 381 N.J. Super. 217, 229 (App. Div. 2005) ("[t]he fact that even an oral agreement is not formalized 'upon the record' does not make it any less binding.") (quoting *Pascarella*, 190 N.J. Super. at 124).

Additionally, "[t]he fact that a formal signed agreement memorializing the parties' settlement never materialized is of no moment," because "[i]t is clear here that the failure of the parties to execute a signed agreement results not from a lack of accord, but from [Weikel] having second thoughts about what [the parties'] agreed to." *Atlas*, 2018 WL 11244845, at *8. But "second thoughts are entitled to absolutely no weight as against [New Jersey's] policy in favor of settlement." *Dep't of Pub. Advoc.*, 206 N.J. Super. at 530. "Taking into account the entire . . . settlement conference as well as the entire exchange that took place on the [r]ecord," then, the Court concludes that each party—including Weikel—"intended and in fact agreed to settle this matter" for the terms placed on the record, plus defendants' agreement to preserve non-reimbursement claims against each other.

*MedPointe Healthcare*, 2009 WL 540680, at *5.  Accordingly, the settlement

agreement should be enforced "despite the fact that a writing failed to materialize

due to [Weikel]'s attempts to renege."  *Id.*

For these reasons, and because the parties did not ultimately agree on all the

terms of a written settlement agreement (in light of the present dispute), the Court

declines AnnieMac's request to enforce the January 15 Draft Settlement

Agreement.  "The bargain clearly was struck" at the settlement conference when

each party unequivocally agreed to settle on the record.  *Pascarella,* 190 N.J. Super.

at 126.  Accordingly, the Court will enforce the terms agreed to by the parties at

that time rather than the written January 15 Draft Settlement Agreement.[15]

*See Atlas*, 2018 WL 11244845, at *8 (enforcing oral settlement agreement reached

at settlement conference over subsequently papered draft because party "took issue"

with proposed changes that would have "significantly alter[ed] the landscape of the

settlement reached" at the conference).[16]

---

[15]    Because the Court will enforce the settlement agreement reached at the
settlement conference, the Court denies AnnieMac's motion only to the extent that
it seeks to enforce the January 15 Draft Settlement Agreement.  AnnieMac's motion
is otherwise granted, inasmuch as the Court agrees with AnnieMac that defendants
did not agree to waive any defenses to Weikel's state law claims.

[16]    The Court incorporates its analysis of the Fair Labor Standards Act and, for
the reasons set forth on the record at the settlement conference, finds that the
settlement was the product of protracted, arms-length negotiations between
experienced counsel and is a fair and reasonable resolution of this case.  [Dkt. 82]
at 22:15-26:14.  The Court also confirms its approval of the settlement agreement.

## B.    Attorneys' Fees

"Attorneys' fees and costs 'may be awarded to a prevailing party . . . where authorized by statute, court rule or contract.'" *Rhodes v. Marix Servicing, LLC*, Civ. No. 12-1636 (MAS), 2020 WL 5760455, at *2 (D.N.J. Sept. 28, 2020) (quoting *Apple Corps., Ltd. v. Ml Collectors Soc'y*, 25 F. Supp. 2d 480, 484 (D.N.J. 1998)). A "prevailing" party entitled to a fee award is "one who has succeeded on any significant issue in litigation [that] achieves some of the benefit the part[y] sought in bringing the suit." *Machado v. L. Offs. of Jeffrey H. Ward*, Civ. No. 14-7401 (MAS), 2017 WL 2838458, at *1 (D.N.J. June 30, 2017) (citations and internal quotation omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, the parties agreed on the record at the settlement conference that "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, or any action to enforce them, the prevailing party shall be entitled to an award of reasonable attorney's fees, costs, and expenses incurred in connection with such action to enforce." [Dkt. 82] at Tr. 16:4-21. Because the Court concludes that the settlement agreement reached during the conference is enforceable, so too is this provision regarding attorneys' fees. *Philadelphia Indem. Ins. Co.*, 2020 WL 13155758, at *2. Accordingly, the Court will permit the filing of appropriate motions for the payment of attorney fees pursuant to the settlement agreement. The Court defers decision on who is a prevailing party, and the amount of fees to be awarded, until those motions have been fully briefed.

39

**C.    SRST's Motion to Withdraw**

The Court also grants SRST's motion to withdraw as counsel for Weikel. [Dkt. 78.]  In reaching this conclusion, the Court has considered "(1) the reasons why withdrawal is sought, (2) the prejudice withdrawal may cause to litigants, (3) the harm withdrawal might cause to the administration of justice and (4) the degree to which withdrawal will delay resolution of the case."  *G.W. v. Ringwood Bd. of Educ.*, Civ. No. 21-20657 (JSA), 2022 WL 15443870, at *2-3 (D.N.J. Oct. 27, 2022), *aff'd*, 2023 WL 4108508 (D.N.J. June 16, 2023) (citations omitted).  Although the Court denies Weikel's motion to enforce settlement, the Court is satisfied that he has been fully and fairly represented by his attorneys from Bathgate—who entered their appearance in this action shortly before SRST moved to withdraw—in connection with this dispute; that SRST's withdrawal can be accomplished without prejudice to him or the other parties; and that permitting SRST to withdraw will not further delay the proceedings.  The Court therefore sees no basis for denying the motion.

40

## IV.    CONCLUSION

For the reasons stated, the Gillens' and plaintiffs' motions to enforce are

GRANTED; Family First's follow-on motion to enforce is GRANTED;

AnnieMac's motion to enforce is GRANTED in part and DENIED in part; Weikel's

motion to enforce is DENIED; and SRST's motion to withdraw is GRANTED.

An accompanying Order follows.

J. Brendan Day
United States Magistrate Judge

July 1, 2025