UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANSISCA ARIAS, *et al.*,

Plaintiffs,

v.

FAMILY FIRST FUNDING, LLC, *et al.*,

Defendants.

Civ. No. 23-1226 (JBD)

MEMORANDUM ORDER

Following a contentious dispute resulting in several competing motions to enforce a settlement agreement, the Court issued an Opinion and Order enforcing the terms of a settlement agreement reached during the December 2024 settlement conference in this case.  *See* [Dkts. 114, 115].  As part of that ruling, the Court concluded that one of the parties' agreed-upon terms provided that "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, or any action to enforce them, the prevailing party shall be entitled to an award of reasonable attorney[s'] fees, costs, and expenses incurred in connection with such action to enforce."  [Dkt. 114] at 39 (quoting [Dkt. 82] at Tr. 16:4-21); *see also* [Dkt. 115] at 2-4.  Accordingly, the Court authorized the filing of appropriate motions for attorneys' fees, costs, and expenses incurred in connection with the motions to enforce.  [Dkt. 114] at 39; [Dkt. 115] at 3-4.

Defendant American Neighborhood Mortgage Acceptance Company, LLC, d/b/a AnnieMac Home Mortgage ("AnnieMac") now seeks an award of $25,717.35 in attorneys' fees and costs incurred by Maddin Hauser Roth & Heller P.C. ("Maddin

Hauser") and Cole Schotz P.C. ("Cole Schotz") in connection with its motion to enforce.  [Dkt. 118.]  Defendant Scott Weikel, from whom AnnieMac seeks its fees, opposes the motion.  [Dkt. 119.]

For the reasons set forth below, the Court GRANTS in part and DENIES in part AnnieMac's motion for attorneys' fees and costs.  The Court will provisionally award AnnieMac $14,154.60, pending any supplemental submission to account for time spent preparing AnnieMac's reply brief on the instant motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The Court outlined the background to this case and the underlying settlement dispute extensively in its July 1, 2025 Opinion and incorporates that Opinion in full.  The Court will limit its discussion here to the relevant background necessary to resolve the present motion.

At the conclusion of a settlement conference held on December 17, 2025, the parties agreed to a settlement resolving the federal and state wage claims asserted by plaintiffs in this case.  *Id.* at 4-9.  A little over a month later, on January 22, 2025, the parties informed the Court that a dispute had arisen regarding the meaning and scope of the putative terms of the settlement agreement. *Id.* at 12.  Specifically, the parties disagreed whether the settlement agreement required AnnieMac and defendants Gabriel and Neusa Gillen (collectively, the "Gillens") to waive or release certain defenses that they may have had to claims that Weikel has asserted against them in a separate litigation filed in New Jersey state court (the "State Court Action").  *Id.* at 10-11.  Unable to resolve the dispute,

2

each of the parties filed competing motions to enforce some version of the settlement agreement.  [Dkts. 96, 98, 102, 106, 107.]

Relevant here, AnnieMac's respective motion argued that "the parties negotiated, finalized, placed on the record, and confirmed via email the principal terms of a valid and enforceable settlement," and asked the Court to enforce the version of the proposed written settlement agreement that was circulated amongst counsel on January 15, 2025, but which had not been executed due to the parties' dispute (the "January 15 Draft Settlement Agreement").  [Dkt. 96-2] at 7-8; [Dkt. 113-3].  AnnieMac sought to enforce that version of the agreement because, in AnnieMac's view, it accurately reflected the release language the defendants had agreed to during the settlement conference—namely, that defendants would release each other only from claims seeking reimbursement for the settlement amounts paid to plaintiffs, but not any other claims.  *Id.*; [Dkt. 112] at 1.  AnnieMac's motion also requested that the Court deem it a prevailing party for purposes of fee-shifting. [Dkt. 96-2] at 8.

By contrast, Weikel's motion to enforce argued that he agreed to settle this matter on the condition that all claims that he "anticipated bringing against the other [d]efendants were preserved *and would not be adversely affected* by having participated in the [s]ettlement."  [Dkt. 106] at 13 (emphasis added); *accord* [Dkt. 110] at 13.  Weikel's motion thus requested that the Court "enter an Order enforcing the settlement agreement consistent with [his] understanding that an entire controversy defense c[could] [not] be asserted against [him] in the pending

3

State Court [Action]," or alternatively, "find that there [wa]s no meeting of minds and declare the settlement agreement null and void." [Dkt. 106] at 5; [Dkt. 110] at 14.

In its resulting Opinion and Order, the Court enforced the settlement agreement that the parties reached during the December 17, 2024 settlement conference, consisting of the terms placed on the record, plus defendants' agreement to preserve non-reimbursement claims against each other. [Dkt. 114] at 35-38; [Dkt. 115] at 2-3. In light of this ruling, the Court denied AnnieMac's motion "to the extent that it s[ought] to enforce the January 15 Draft Settlement Agreement," but otherwise granted the motion, "inasmuch as the Court agree[d] with AnnieMac that defendants did not agree to waive any defenses to Weikel's state law claims." [Dkt. 114] at 38 n.15. The Court denied Weikel's motion in full. *Id.* at 41; [Dkt. 115] at 2.

As to fee-shifting, the Court explicitly held that

[T]he parties agreed on the record at the settlement conference that "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, or any action to enforce them, the prevailing party shall be entitled to an award of reasonable attorney[s'] fees, costs, and expenses incurred in connection with such action to enforce." [A]nd [b]ecause the Court conclude[d] that the settlement agreement reached during the conference [wa]s enforceable, so too [wa]s th[e] provision regarding attorneys' fees.

[Dkt. 114] at 39 (citations omitted). The Court deferred decision "on who [wa]s a prevailing party, and the amount of fees to be awarded," and directed the parties to submit any motions for attorneys' fees, costs, and expenses incurred in connection with their respective motions to enforce by August 8, 2025. *Id.*; [Dkt. 115] at 3-4.

4

AnnieMac's present fee motion followed on August 8, 2025, which Weikel opposes. [Dkts. 118, 119.]

## II.    LEGAL STANDARDS

Under the general "American Rule," parties typically are responsible for paying their own attorneys' fees.  *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003).  As such, courts generally do not award fees to a prevailing party absent explicit authority "by statute, court rule[,] or contract."  *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 484 (D.N.J. 1998).

Here, the Court determined that the parties included as a term of their enforceable settlement that "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, or any action to enforce them, the prevailing party shall be entitled to an award of reasonable attorney[s'] fees, costs, and expenses incurred in connection with such action to enforce."  [Dkt. 114] at 39 (quoting [Dkt. 82] at Tr. 16:4-21); *see also* [Dkt. 115] at 3 ("If a motion to enforce the settlement is filed, the prevailing party or parties shall be entitled to an award of reasonable attorneys' fees, costs, and expenses incurred in connection with the motion.").  Accordingly, the parties' settlement agreement provides a basis for an award of counsel fees and costs here.  *Goethe v. Goethe*, No. A-3043-11T4, 2013 WL 2173182, at *4 (N.J. Super. Ct. App. Div. May 21, 2013) (upholding award of attorneys' fees incurred in enforcing settlement as provided in the parties' settlement agreement) (citing *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,

158 N.J. 561, 570 (1999) and *Satellite Gateway Commc'ns, Inc. v. Musi Dining Car Co.,* 110 N.J. 280, 285 (1988)); *Phila. Indem. Ins. Co. v. Mar-Bridge Enters., Inc.,* Civ. No. 18-15205 (DEA), 2021 WL 7868721, at *1 (D.N.J. Sept. 29, 2021) (permitting award of attorneys' fees incurred in enforcing settlement pursuant to the terms of the agreement).[1]

"A 'prevailing' plaintiff entitled to a fee award is one who has succeeded on 'any significant issue in litigation [that] achieves some of the benefit the part[y] sought in bringing the suit.'" *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 601-02 (D.N.J. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In the Third Circuit, "[t]he test for prevailing party status is essentially a twofold inquiry." *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3d Cir. 1992) (quoting *Dunn v. United States,* 842 F.2d 1420, 1433 (3d Cir. 1988)).  First, the Court must decide whether the moving party obtained relief on a

---

[1]     The Court rejects Weikel's argument that AnnieMac is not entitled to attorneys' fees and costs as a general matter because "there was no breach of a settlement term or . . . any formal settlement agreement," as "a formal settlement agreement was never reached in [this] case," and "the term sheet does not provide that the failure of the [d]efendant parties to agree to specific language constitutes a breach of any term sheet or agreement between the [d]efendants." [Dkt. 119] at 10. A "breach" of the settlement terms is not the only basis on which a party may recover fees under the terms to which the parties agreed. [Dkt. 114] at 39 (quoting [Dkt. 82] at Tr. 16:4-21) (a prevailing party is entitled to a fee award "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, *or any action to enforce them*" (emphasis added)).  Moreover, in its Opinion, the Court concluded that the parties had reached the terms of a settlement agreement during the settlement conference in December 2024; the parties' prior motion practice unquestionably concerned an "action to enforce" those terms; and, therefore, the fee provision the parties agreed to is applicable here. *Id.*; *see also* [Dkt. 115] at 2-3.

significant claim in the litigation.  *Id.*  Then, the Court must evaluate whether there is a causal connection between the litigation and the relief obtained.  *Id.*

Once a court determines that a party has prevailed for purposes of a fee award, the court must then decide upon a reasonable award of fees and costs. The Third Circuit uses the "lodestar" method as a starting point to assess whether attorneys' fees are reasonable, which courts determine by calculating the "'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 433).  The "party seeking attorney[s'] fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable."  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and [the] rates claimed.'"  *Id.* (quoting *Hensley,* 461 U.S. at 433).

Specifically, Local Civil Rule 54.2 provides that the party seeking fees must submit an affidavit setting forth the following:

> (1)  the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;
>
> (2)  a record of the dates of services rendered;
>
> (3)  a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

7

> (4) the time spent in the rendering of each of such services; and
>
> (5) the normal billing rate for each of said persons for the type of work performed.

L. Civ. R. 54.2(a). The affidavit shall also set forth the "[total] time spent by each individual performing services," "describe[e] all fee agreements," and detail "both the amount billed to the client for fees and disbursements and the amount paid." L. Civ. R. 54.2(a), (b).

"[O]nce the fee petitioner 'submit[s] evidence supporting the hour[s] worked and rates claimed,' the party opposing the fee application has the burden to challenge the reasonableness of the requested fee." *Edmondson v. Lilliston Ford, Inc.*, Civ. No. 13-7704 (RMB), 2017 WL 1502788, at \*7 (D.N.J. Apr. 26, 2017), *aff'd*, 722 F. App'x 251 (3d Cir. 2018) (not precedential) (citing *McKenna*, 582 F.3d at 459 (citations omitted)). "The district court is afforded a 'great deal of discretion' to adjust the awarded fee in light of the opponent's objections." *Levy v. Glob. Credit & Collection Corp.*, Civ. No. 10-4229 (RBK), 2011 WL 5117855, at \*2 (D.N.J. Oct. 27, 2011) (quoting *Hensley*, 461 U.S. at 433). Indeed, "[i]f the party opposing the fee petition meets its 'burden of proving that an adjustment is necessary,' the Court has wide discretion to adjust the attorneys' fee[s] for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours expended or duplication of efforts." *Apple Corps.*, 25 F. Supp. 2d at 485 (first quoting *Rode*, 892 F.2d at 1183); and then citing *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983)).

"A court's calculation of the lodestar, however, does not end its inquiry on a fee application." *McKenna*, 582 F.3d at 455.  Once the lodestar is calculated, a court may "adjust a fee award upward or downward." *Id.*  However, the Court's discretion to do so is not unlimited: "[a]fter calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543-44 (2010)).[2]

## III.    DISCUSSION

Here, AnnieMac seeks an award of attorneys' fees and costs totaling at least $25,717.35.[3]  [Dkt. 118-1] at 6.  Specifically, AnnieMac seeks an award of fees for

---

[2]     Those factors are (1) the "time and labor required," (2) the "novelty and difficulty" of the issues presented, (3) the requisite skill needed "to perform the legal service properly," (4) the "preclusion of other employment by the attorney due to acceptance of the case," (5) the "customary fee," (6) "[w]hether the fee is fixed or contingent," (7) the "[t]ime limitations imposed by the client or the circumstances," (8) the "amount involved and the results obtained," (9) the "experience, reputation, and ability of the attorneys," (10) the "'undesirability' of the case," (11) the "nature and length of the professional relationship with the client," and (12) "[a]wards in similar cases." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also id.* (noting that "consideration of *Johnson* 'factors' is permissible on the back end of a lodestar's calculation, as long as they are not already 'subsumed in the lodestar calculation.'").

[3]     AnnieMac "reserve[d] its rights to submit further fee petitions" for "any additional fees and costs incurred in connection with its [m]otion to [e]nforce [s]ettlement – including, but not limited to, the preparation of [its fee petition], the review of any response to the same, and preparing any reply brief in support of the [fee petition]."  [Dkt. 118-1] at 16.

Robert M. Horwitz, a partner at Michigan-based law firm Maddin Hauser, for

52.6 hours at a rate of $435.00 per hour—totaling $22,881.00[4] with the following

breakdown:

1.  2.5 hours spent preparing a letter submitted to the Court on January 22, 2025, first notifying the Court of the parties' settlement dispute, *see* [Dkt. 113] (the "January 22 Letter").

2.  11.3 hours spent attempting to resolve the parties' settlement dispute without motion practice.

3.  20.5 hours spent working on AnnieMac's motion to enforce the settlement agreement and analyzing/responding to the competing motions to enforce.

4.  3.3 hours spent reviewing the Court's Opinion and Order resolving the parties' competing motions to enforce and facilitating redactions to the same.

5.  5.7 hours spent facilitating and implementing the settlement pursuant to the Court's Order enforcing the settlement terms agreed to at the December 2024 settlement conference.

6.  9.3 hours spent on the present motion for recovery of attorneys' fees and costs.

[Dkt. 118-2] ¶¶ 6, 9, 13, Ex. A.

AnnieMac also seeks $2,801.25 in attorneys' fees incurred by New

Jersey-based law firm Cole Schotz for 6.85 hours billed for its participation in

drafting the January 22 Letter and in connection with AnnieMac's motion to enforce

settlement and resulting fee request.  Cole Schotz's billed hours are broken down as

---

[4]    On the Court's review, Maddin Hauser's unredacted invoices reflect 53.3 hours of work billed by Horwitz, totaling $23,185.50 in fees.  [Dkt. 118-2] at Ex. A. However, the time discrepancies appear to fall within categories two and five of the billing record, *id.*, and the Court will exclude all of the time billed in category two and reduce the time billed in category five, *see infra* at 22-23, 27-28.  These small discrepancies are accordingly irrelevant for purposes of the lodestar analysis.

follows:  3.9 hours billed at a rate of $490 per hour by litigation associate Connor M. Mannion for a total of $1,911.00 in fees; 1.35 hours billed at a rate of $415 per hour by litigation associate Catherine J. Costagliola for a total of $560.25 in fees; 0.4 hours billed at a rate of $400 per hour by paralegal Frances Pisano for a total of $160.00 in fees; and 0.5 hours billed at a rate of $400 per hour by paralegal Amy N. Figiel for a total of $200.00 in fees.  [Dkt. 118-3] ¶¶ 5, 7-11, 14, Ex. A.[5]

Finally, AnnieMac seeks to recover $35.10 in litigation costs.  [Dkt. 118-2] ¶ 12, Ex. A at 17.

Weikel opposes AnnieMac's request for attorneys' fees and costs on several grounds.  [Dkt. 119.]  First, he argues that AnnieMac is not entitled to any attorneys' fees or costs because it did not prevail on its motion to enforce the settlement agreement.  *Id.* at 9-10.  Weikel also argues that an award of attorneys' fees under the circumstances presented here would be fundamentally unfair.  *Id.* at 10-11.  Finally, Weikel alternatively argues that if the Court does permit the recovery of attorneys' fees and costs, AnnieMac's "request for attorneys' fees should be reduced" because the time it spent "on the narrow issue presented" and the hourly rates for the Cole Schotz associates and paralegals staffed on this matter were not reasonable.  *Id.* at 11-18.  The Court addresses each of Weikel's arguments in turn.

---

[5]    On the Court's review of the billing records submitted, the total number of relevant hours that Cole Schotz billed is 6.15, not the 6.85 hours that AnnieMac's motion papers reflect.  *Compare* [Dkt. 118-3] ¶¶ 10-11 *with* [Dkt. 118-3] at Ex. A. The Court will only credit Cole Schotz for the hours reflected in its billing records in conducting the lodestar analysis below.

11

### A.    AnnieMac is a Prevailing Party Entitled to Attorneys' Fees and Costs Pursuant to the Settlement Agreement

The Supreme Court has given a "generous formulation" to the term "prevailing party," explaining that "plaintiffs may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (quotation omitted).  Under this standard, a party may be deemed prevailing "even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." *Institutionalized Juveniles v. Sec'y of Pub. Welfare,* 758 F.2d 897, 912 (3d Cir. 1985); *see also K.A.L. v. Salem Bd. of Educ.*, Civ. No. 94-661 (JEI), 1994 WL 327160, at *3 (D.N.J. June 21, 1994) ("A [party] need not achieve the relief he originally sought exactly or completely in order to be deemed a prevailing party."  (citations omitted)).

Weikel argues that AnnieMac is not a prevailing party because the Court rejected AnnieMac's request to enforce the January 15 Draft Settlement Agreement, and it therefore did not obtain the relief it sought.  [Dkt. 119] at 10.  Although the Court did not enforce the specific version of the settlement agreement set forth in AnnieMac's motion to enforce, the Opinion specifically noted that "the Court denie[d] AnnieMac's motion only to the extent that it s[ought] to enforce the January 15 Draft Settlement Agreement."  [Dkt. 114] at 38 n.15.  The Court otherwise granted AnnieMac's motion, "inasmuch as [it] agree[d] with AnnieMac that defendants did not agree to waive any defenses to Weikel's state law claims." *Id.*  The central thrust of AnnieMac's motion was to enforce a version of the

12

settlement agreement that accurately reflected the release language it believed defendants had agreed to during the settlement conference—specifically, that defendants would release each other only from claims seeking reimbursement for the settlement amounts paid to plaintiffs, but not for any other claims.  [Dkt. 96-2] at 7-8; [Dkt. 112] at 1.  Because the Court agreed with that proposition and ultimately enforced a version of the settlement agreement containing that release language, the Court readily concludes that that AnnieMac "succeed[ed] on [a] significant issue in [this] litigation" because the relief it obtained was generally similar to the relief it sought.  *Hensley*, 461 U.S. at 433 (quotation omitted).  AnnieMac is thus a prevailing party entitled to attorneys' fees and costs under the settlement agreement.

### B.  Principles of Fundamental Fairness Do Not Preclude an Award of Fees and Costs

Weikel contends that "it would not be fair or equitable to award attorney[s'] fees to AnnieMac in light of [its] pre-motion procedural posture," as "Weikel and AnnieMac had agreed to terms," and AnnieMac never indicated "that it would be changing its position in connection with its motion to enforce the settlement agreement if Weikel did not cave to the demands of the Gillen[s]."  [Dkt. 119] at 11.  Weikel additionally argues that because he "sought [his] requested language based upon his good faith understanding of what had been agreed to at the [s]ettlement [c]onference," fees are not warranted.  *Id.*

As an initial matter, the Court need not (and does not) find that Weikel acted in bad faith in pursuing his respective motion to enforce.  Acting in "bad faith" is

13

not a contractual prerequisite for the recovery of fees under the terms of the settlement agreement.  That agreement provided that "[i]n the event of any . . . breach of a settlement term sheet, or formal settlement agreement, or any action to enforce them, the prevailing party shall be entitled to an award of reasonable attorney[s'] fees, costs, and expenses incurred in connection with such action to enforce" regardless whether any such breach or action to enforce was in good or bad faith.  [Dkt. 114] at 39 (quoting [Dkt. 82] at Tr. 16:4-21).  Indeed, that fee provision was an undisputed term of the settlement that the parties unequivocally agreed to be bound by on the record at the settlement conference—neither Weikel nor any other party challenged that term in their motions to enforce.  *Cf.* [Dkts. 96, 98, 102, 106, 107].

To be sure, courts have an inherent discretionary power to award attorneys' fees as a sanction for a party's bad faith litigation conduct, *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (quotation omitted), but that is not at issue here.  There is a significant distinction between fees recovered pursuant to a contract and a discretionary award of fees conferred "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*; *see also United States Liab. Ins. Co. v. Marago*, Civ. No. 22-1913 (RLS), 2024 WL 6078930, at *2 (D.N.J. May 13, 2024), *report and recommendation adopted,* 2025 WL 3173858 (D.N.J. Nov. 13, 2025) ("Courts do not ordinarily grant attorneys' fees and costs unless specifically authorized by statute or party agreement *or* where there is bad faith." (citing *Hobbs v. Am. Invs. Mgt., Inc.*, 576 F.2d 29, 35 (3d Cir. 1978)) (emphasis

14

added)); *Fortune Title Agency, Inc. v. Fortune Abstract Co. LLC*, Civ. No. 23-1914 (JBC), 2025 WL 1627122, at \*3 (D.N.J. Jan. 30, 2025), *report and recommendation adopted,* 2025 WL 1627207 (D.N.J. Feb. 27, 2025) (granting party's request for an award of attorneys' fees and costs associated with a motion to enforce pursuant to a provision of the settlement agreement being enforced, but denying request for fee award as a result of defendants' "bad faith conduct.").  Because AnnieMac seeks to recover fees based on an agreed-upon settlement term that did not contemplate a bad faith component as opposed to the Court's inherent discretionary authority, Weikel's good faith or bad faith is not relevant to the analysis.

The Court also rejects Weikel's argument that "an award of attorney[s'] fees would be contrary to notions of fundamental fairness," because Weikel and AnnieMac had essentially resolved their dispute before "the Gillens' refusal to agree to the compromised language that was accepted by all other parties."  [Dkt. 119] at 10.  Although AnnieMac, Family First, and Weikel agreed to revised release language after the settlement dispute arose, that agreement was made in an effort to obviate the need for Court intervention in the parties' settlement dispute. [Dkts. 87, 89.]  AnnieMac only agreed to a compromise to avoid motion practice, as it made clear that it never agreed to waive any defenses at the settlement conference throughout the dispute proceedings and in their resulting motion to enforce.  *Id.*; [Dkt. 96-2] at 2-8; [Dkt. 96-3] ¶¶ 5, 8, 17-19; [Dkt. 112] at 1-3; [Dkt. 113] at 1-3.  All parties could not agree; motions to enforce became necessary; and Weikel took a position that, the Court later found, materially deviated from the

agreed-upon settlement. In that context, AnnieMac was well within its right to take a position consistent with the agreement—*i.e.*, that defendants did not agree to any waiver of defenses in the State Court Action. And Weikel was well aware that this was a possibility. There is no unfairness, fundamental or otherwise, in holding Weikel to the terms of the settlement agreement.[6]

### C.    The Court Will Provisionally Award AnnieMac Attorneys' Fees and Costs in the Amount of $14,154.60

Weikel argues that any fees awarded to AnnieMac should be reduced because the hourly rates for the Cole Schotz attorneys and legal professionals who worked on this case were not reasonable, and because the time AnnieMac spent on issues related to its motion to enforce was not reasonable. [Dkt. 119] at 11-18. Specifically, Weikel contends that AnnieMac has not met its burden of demonstrating that Cole Schotz's billing rates are reasonable because they are not consistent with AnnieMac's proffered community-standard billing guidelines. *Id.* at 17-18. Moreover, regarding the number of hours billed, Weikel takes issue with (1) the time AnnieMac billed "facilitating the terms of the settlement," which Weikel argues would have been necessary regardless of any dispute or motion practice, *id.* at 14-15; (2) the time AnnieMac billed for its pre-motion dispute resolution efforts, which Weikel argues does not fall within the purview of the fee provision of the settlement agreement, *id.* at 15; (3) the 20+ hours AnnieMac spent preparing its

---

[6]    In any event, and as discussed in more detail below, *see infra* at 22-23, the Court will exclude the time AnnieMac spent on pre-enforcement activities, so Weikel need not bear AnnieMac's fees and costs for the period during which he and AnnieMac reached their tentative agreement.

16

motion to enforce, which Weikel argues was "exorbitant and duplicative,"
*id.* at 15-16; and (4) the time Cole Schotz spent on this matter, which Weikel
contends was entirely duplicative of Maddin Hauser's work and should be
discounted entirely, *id.* at 15-17.[7]

### 1.      The Lodestar

As noted, the "lodestar" method is the starting point to assess whether
attorneys' fees are reasonable.  *McKenna,* 582 F.3d at 455 (3d Cir. 2009) (quoting
*Hensley*, 461 U.S. at 433).  Courts calculate the lodestar by multiplying the
"'number of hours reasonably expended on the litigation . . . by a reasonable hourly
rate.'"  *Id.*  "Reasonable hourly rates are typically determined based on the market
rate in the attorney's community for lawyers of similar expertise and experience."
*Machado v. Law Offs. of Jeffrey H. Ward*, Civ. No. 14-7401 (MAS),
2017 WL 2838458, at *2 (D.N.J. June 30, 2017) (citing *Interfaith*, 426 F.3d at 712).
"The starting point in determining a reasonable hourly rate is the attorney's usual

---

[7]      Weikel also complains that, due to redactions in its billing records, AnnieMac
"cannot demonstrate at certain points throughout its billing process that its billing
practices are either reasonable or non-duplicative, or that some of the time entries
are even related to the . . . settlement dispute."  [Dkt. 119] at 16.  However,
AnnieMac does not seek fees stemming from the completely redacted billing entries,
and of the fees it does claim, only three entries contain partial redactions.
*See* [Dkt. 118-2] at 26, 28, 33 (Horwitz's April 1, 2025 billing entry for 0.2 hours,
Horwitz's April 28, 2025 billing entry for 0.7 hours, and Horwitz's May 6, 2025
billing entry for 2.6 hours).  Out of an abundance of caution, the Court reviewed the
unredacted versions of those partially redacted billing records *in camera* and is
satisfied that AnnieMac seeks to recover only those fees that correspond with its
unredacted and partially redacted time entries, all of which fall into the six
categories of work detailed above.

billing rate, but this is not dispositive.'" *Id.* (quoting *Pub. Int. Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)).

"After a court ascertains a reasonable hourly rate, it must then determine whether the hours that the attorney expended are reasonable." *Id.* (citing *Hensley*, 461 U.S. at 433-34). In making that determination, the Court must exclude any hours that were "not reasonably expended" from the fee calculation. *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* The Court also "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (citing *id.*). Accordingly, "[t]o determine whether the hours expended in [a] matter are reasonable," the Court must "'go line, by line, by line' through the billing records supporting the fee request.'" *Rhodes v. Marix Servicing, LLC*, Civ. No. 12-1636 (MAS), 2020 WL 5760455, at *3 (D.N.J. Sept. 28, 2020) (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)).

### a.    Reasonableness of Proposed Hourly Rates[8]

First, the Court notes that Weikel does not dispute the reasonableness of Horwitz's rate of $435.00 per hour. [Dkt. 119] at 14. Upon review, AnnieMac has provided appropriate documentation reflecting Horwitz's billing rate, *see* [Dkt. 118-2] ¶¶ 9-11, Ex. A, and the Court is satisfied that Horwitz's hourly rates are reasonable based on prevailing market rates. *See U.S. Sewer & Drain,*

---

[8]    Because the Court will exclude all of the time billed by Costagliola, *see infra* at 23, the Court need not address the reasonableness of her hourly rate.

*Inc. v. Earle Asphalt Co.*, Civ. No. 15-1461 (TJB), 2016 WL 11663197, *9 (D.N.J. June 22, 2016) (concluding that hourly rates were reasonable where non-moving party did not object to attorney's rates and it appeared that the rates listed were reasonable in light of prior case precedent finding that hourly rates ranging from up to $540.00 to $750.00 per hour for partners were reasonable (collecting cases)); [Dkt. 118-2] at Ex. B. The Court accordingly accepts Horwitz's $435.00 per hour rate as reasonable for purposes of the lodestar calculation below.

As to Mannion, the Court concludes that his billing rate should be adjusted. AnnieMac seeks to impose a billing rate of $490.00 per hour for Mannion, which it states "is commensurate with the prevailing market rates in New Jersey and with [his] background and experience." [Dkt. 118-3] ¶ 5. In support of its position, AnnieMac cites the reasonable hourly rates established by Community Legal Services ("CLS"), which publishes a fee schedule based on "Philadelphia law firm market survey data and increases in the Consumer Price Index," and provides that Mannion has nearly five years of post-law school experience. [Dkt. 118-2] at Ex. B; [Dkt. 118-3] ¶¶ 4-5; *see also* [Dkt. 118-1] at 13-15.

As an initial matter, the Court notes that courts in this District (including the undersigned) routinely use the CLS guidelines to determine reasonable hourly rates for attorneys and legal professionals for purposes of fee petitions. *See, e.g., Asdal Holdings, LLC v. IdeaSoil, LLC*, Civ. No. 22-04158 (AME), 2025 WL 1453134, at *4 n.5 (D.N.J. May 21, 2025) (citing the CLS attorney fees schedule in assessing reasonableness of hourly rates in breach of contract dispute); *Depth Charge Marine,*

19

*LTD. v. F/V C. ANN*, Civ. No. 24-6336 (RK), 2025 WL 1088236, at *9 (D.N.J. Apr. 11, 2025) (noting that the CLS table of reasonable hourly rates "ha[s] been applied in the District of New Jersey" and finding that "counsel's hourly rate [wa]s well below the CLS rate for his experience and [ ] thus, reasonable."); *Lin v. Hudson City Sav. Bank*, Civ. No. 18-15387 (JBD), 2024 WL 1704730, at *4 (D.N.J. Apr. 19, 2024) (accepting and applying hourly rates consistent with the CLS guidelines and noting that "multiple courts in this district have adopted the CLS rates as a reasonable benchmark for the prevailing market rates in Trenton and the surrounding southern New Jersey legal market" (collecting cases)).  The Court accordingly finds that the CLS guidelines are an appropriate benchmark for determining reasonable hourly rates here.

However, for an attorney with Mannion's level of experience (two to five years), the CLS guidelines provide a range of $265.00-$315.00 per hour—significantly lower than the $490.00 hourly rate that AnnieMac seeks to apply here. *Contrast* [Dkt. 118-2] at Ex. B *with* [Dkt. 118-3] ¶¶ 4-5.  While AnnieMac cites some cases in which courts in this District upheld associate billing rates higher than the CLS guidelines, *see, e.g.,* [Dkt. 120] at 9-10, the Court sees no reason for such a departure here, especially considering that AnnieMac's requested rate for Mannion (an associate) is higher than the requested rate for Horwitz, who is a partner (albeit at a different firm) with several decades more legal experience than Mannion. [Dkt. 118-2] ¶¶ 9-10; [Dkt. 118-3] ¶¶ 4-5.  Consistent with the CLS guidelines, the

20

Court finds that an hourly rate of $300.00 is reasonable within the prevailing legal market for an attorney of Mannion's experience.[9]

For the same reasons, the Court also will adjust Pisano's and Fiegel's billing rates. AnnieMac states that Pisano and Fiegel each have over twenty years of experience as paralegals and seeks to impose an hourly rate of $400.00 for both, which AnnieMac asserts is "commensurate with the prevailing market rates in New Jersey and with [their] background and experience." [Dkt. 118-3] ¶¶ 8-9. As with Mannion, AnnieMac relies on the CLS guidelines to demonstrate that Pisano's and Fiegel's proffered billing rates are reasonable. *See* [Dkt. 118-1] at 13-15; [Dkt. 118-2] at Ex. B. However, for "Senior and Supervisory Paralegal[s]," the CLS guidelines recommend an hourly rate range of $245-$285. [Dkt. 112-3] at Ex. B. Once again, the Court sees no reason to depart from the CLS guidelines and finds that a rate of $285.00 per hour is reasonable within the prevailing legal market for paralegals of Pisano's and Fiegel's experience.

---

[9]    To the extent AnnieMac argues that the Court should not reduce any hourly rates because Weikel did not provide "affirmative evidence of the unreasonableness of the rates," [Dkt. 120] at 9, that argument is rejected. It is AnnieMac's burden to show that its requested hourly rates are reasonable in the first instance, *see Interfaith*, 426 F.3d at 703 n.5 (citations omitted), and AnnieMac's own proffered community-standard billing guidelines fail to support its reasonableness argument on this point. Accordingly, a downward departure is warranted. *Allegro Freight, Inc. v. World Trucking Exp., Inc.*, Civ. No. 07-4294 (RBK), 2008 WL 4601926, at *3 (D.N.J. Oct. 10, 2008) (parties "are not entitled to their requested fees and costs until they . . . satisfy their burden of establishing the reasonableness of the amount claimed").

21

### b.    Reasonableness of Hours Billed

AnnieMac's billing records can be broken down to six categories of work: (1) time spent preparing the January 22, 2025 Letter; (2) time spent attempting to resolve the parties' settlement dispute without motion practice; (3) time spent on preparing materials in support of its motion to enforce; (4) time spent reviewing the Court's Opinion and Order ruling on the parties' motions to enforce and facilitating redactions to the same; (5) time spent facilitating and implementing the settlement pursuant to the Court's Opinion and Order; and (6) time spent on this fee petition. [Dkt. 118-2] ¶ 6, Ex. A; [Dkt. 118-3] at Ex. A.  To account for these six categories, AnnieMac seeks fees and costs dating back to January 19, 2025 and continuing through at least July 2025.  [Dkt. 118-2] at Ex. A; [Dkt. 118-3] at Ex. A.  Under the circumstances, the Court finds this to be an unreasonable time frame.

Although the parties first raised their settlement dispute with the Court via the January 22 Letter, *see* [Dkt. 113], their actual enforcement efforts did not begin until March 31, 2025, when it became clear that the parties reached an impasse on the dispute and the Court granted leave to file motions to enforce the settlement agreement.  *See* [Dkt. 95].  While it is true that "the parties did not initially see eye to eye on the [a]greement" before March 31, that "is not in and of itself particularly troubling," as "[s]uch disputes are not uncommon" while formally memorializing an oral agreement, and "parties [ ] are often able to resolve their issues on their own with little, or even sometimes no, nudging by the Court."  *U.S. Sewer & Drain*, 2016 WL 11663197, *10 (permitting attorneys' fees for settlement enforcement tasks from date on which the Court directed motion practice).  Because it did not

22

become necessary for counsel to engage in compensable *enforcement* efforts until March 31, 2025, the Court will exclude Maddin Hauser and Cole Schotz's billed time in categories one and two, all of which occurred before March 31. [Dkt. 118-2] ¶ 6, at 9-10, 12-13, 19-10; [Dkt. 118-3] ¶¶ 10, 12, at 7, 9, 12. The Court will accordingly subtract the 13.8 hours that Horwitz billed between January 19, 2025 and March 27, 2025; the 0.9 hours that Mannion billed on January 22, 2025 and February 19, 2025; and the 1.35 hours that Costagliola billed on March 24, 2025 from its lodestar calculation below. *Id.*

Regarding category three—time spent preparing AnnieMac's motion to enforce briefing (and related tasks)—Weikel argues that the "time spent on th[e] narrow issue presented to the Court in this matter is [ ] exorbitant and duplicative," as "[t]his is not a complex case, and the issue presented, whether or not a settlement agreement should be enforced, did not require expertise or outside consultation, and certainly did not require spending over 20 hours of motion preparation, especially where oral argument was never held." [Dkt. 119] at 15-16. As to Horwitz specifically, Weikel also points out that he "never bill[ed] in less than [0.2] increments," and takes issue with the fact that he billed for time spent "providing edits/comments to co-defendants' briefs." *Id.* First, the Court finds the time Horwitz spent on AnnieMac's motion to enforce and related tasks generally to be reasonable. Although the Court did not hear oral argument on the motions to enforce, the briefing involved a contentious settlement agreement, and how it impacted certain claims and defenses in a separate state-court matter. Moreover,

23

there were several competing motions at issue, *see* [Dkts. 96, 98, 102, 106, 107], and AnnieMac's motion specifically contributed to the Court's ultimate resolution of the dispute.

Nevertheless, the Court agrees with Weikel that the hours Horwitz billed for some tasks were excessive, and minor reductions to Horwitz's fees in this category are therefore appropriate. In particular, the Court concludes that the time Horwitz spent on the following tasks was overkill: (1) analyzing the Court's two-sentence Text Order granting the parties leave to file motions to enforce filed at [Dkt. 95] (0.2 hours), (2) analyzing the parties' two-page Consent Order entered at [Dkt. 105] (0.2 hours), and (3) analyzing and communicating about the Court's decision to file the January 22 Letter at [Dkt. 113] (0.5 hours). *See* [Dkt. 118-2] at 20, 33-34. Additionally, although some amount of coordination between AnnieMac and the other parties was required for purposes of motion preparation and strategy, the Court finds the total amount of time Horwitz spent on such communication was excessive. To account for the foregoing, the Court will reduce the time Horwitz billed in this category from 20.5 hours to 18 hours. *See Evans*, 273 F.3d at 362 ("in determining whether the fee request is excessive the [C]ourt will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." (quotation omitted) (cleaned up)).

Regarding Cole Schotz's hours, Weikel argues that none of the time Cole Schotz billed in connection with the motion to enforce was necessary or reasonable

24

because it was "needlessly duplicative" of Maddin Hauser's legal work, but he does not identify any specific billing entries indicative of duplication. [Dkt. 119] at 15-17.[10] To the contrary, Weikel generally contends that there was no need for local counsel in this matter, and broadly states that "it is apparent and obvious from the invoices submitted to the Court that [Maddin Hauser] essentially claim[s] to have performed the exact same work as Cole Schotz" because both Maddin Hauser and Cole Schotz billed time for work on AnnieMac's motion to enforce and supporting materials. *Id.* at 17.

The Court rejects Weikel's argument that the hours billed by Cole Schotz are categorically unreasonable. Courts in this District routinely award fees to local counsel when the time expended on their representation is well founded, and here, "[a] certain amount of communication between [Maddin Hauser] and local counsel, and work on the part of local counsel, was necessary during the course of the litigation." *Port Drivers Fed'n 18, Inc. v. All Saints*, Civ. No. 09-868 (WHW), 2011 WL 3610100, at *10 (D.N.J. Aug. 16, 2011); *see also Sabinsa Corp. v. Herbakraft, Inc.*, Civ. No. 14-04738 (RBK), 2021 WL 5449087, at *6 (D.N.J. Nov. 22, 2021) ("engagement of both local, i.e., forum, and non-forum counsel does NOT mean [absent an exception not applicable here] that the time entries of the non-forum

---

[10]    The Court notes that the party opposing a fee award may not rely on generalized objections; rather, the opposing party must support its opposition with specific facts. *Cintron v. Comm'r of Soc. Sec.*, Civ. No. 13-7125 (KM), 2015 WL 3938998, at *2 (D.N.J. June 25, 2015) ("The party opposing a fee request has the burden to submit objections that are specific and well-supported."). Nevertheless, the Court has conducted its own independent review of AnnieMac's billing records and analyzes them for overlap based upon Weikel's general arguments.

25

counsel and the forum counsel are automatically duplicative."); *Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*, Civ. No. 18-10869 (CLW), 2022 WL 773261, at *5 (D.N.J. Jan. 27, 2022), *report and recommendation adopted,* 2022 WL 769904 (D.N.J. Mar. 14, 2022) (awarding fees to local counsel after finding that the hours billed "were reasonable and not duplicative.").

On the Court's line-by-line review of AnnieMac's billing records, Cole Schotz's billed time appears neither duplicative nor excessive.  Cole Schotz billed a total of only 3.55 hours on the motion to enforce, and based on its billing descriptions, there does not appear to be significant overlap between Maddin Hauser and Cole Schotz's work.  *Compare* [Dkt. 118-2] at Ex. A *with* [Dkt. 118-3] at Ex. A.  Indeed, Cole Schotz appears to have billed only for tasks that could not be accomplished without the assistance of local counsel.  *See* [Dkt. 118-3] at Ex. A; *Ingemi v. Pelino & Lentz*, 866 F. Supp. 156, 162 (D.N.J. 1994) ("District court local rules [ ] require local counsel to take more than a *de minimis* role in the representation" and help "ensure that attorneys representing New Jersey clients in New Jersey courts are sufficiently familiar with state law and practice to represent their clients knowledgeably and effectively." (emphasis added)); L. Civ. R. 101.1(c)(4) ("Only an attorney at law of this Court may file papers, enter appearances for parties, sign stipulations, or sign and receive payments on judgments, decrees or orders.").  The Court thus finds it reasonable and appropriate to award AnnieMac with the full amount of time that Cole Schotz billed on the motion to enforce, consisting of 2.65 hours billed by Mannion, 0.4 hours billed by Figiel, and 0.5 hours billed by Pisano.

Regarding category four, Weikel does not specifically challenge the 3.3 hours Horwitz spent reviewing and facilitating redactions to the Court's Opinion and Order resolving the parties' motions to enforce.[11]  Instead, Weikel states generally that the hours are "not reasonable and [are] excessive." [Dkt. 119] at 14.  On the Court's review, the hours Horwitz spent on the various tasks in this category are well documented and appear reasonable.  In light of this and the absence of a specific objection from Weikel, the Court "will not . . . arbitrarily exclude [these] hours from the lodestar calculation." *Castro v. McCarthy & Jennerich*, Civ. No. 11-01832 (JAD), 2013 WL 335973, at *8 (D.N.J. Jan. 10, 2013), *report and recommendation adopted,* 2013 WL 324300 (D.N.J. Jan. 25, 2013) (citations omitted).

As to category five, the Court will reduce the 5.7 hours that Horwitz spent "complying with the Order in terms of facilitating and implementing the settlement, including preparing the release of claims ordered by the Court and communications with counsel re[garding the] same." [Dkt. 118-2] ¶ 6, Ex. A at 41-44.[12]  The Court does not agree with Weikel's assertion that hours spent on "facilitating the terms of the settlement" are categorically un-recoverable.  [Dkt. 119] at 14-15.  But the Court does believe that a partial reduction is warranted because there is not a sufficient causal connection between some of the time that Horwitz billed in this category— like time spent gathering closing documents and coordinating wire payments,

---

[11]    Cole Schotz did not bill any time in this category.

[12]    Cole Schotz did not bill any time in this category.

27

*see* [Dkt. 118-2] at 42-44—and AnnieMac's motion to enforce and the Court's resulting Opinion and Order. Accordingly, the Court concludes that some of the time Horwitz spent facilitating the terms of the agreement following the Court's ruling was unwarranted, and a modest downward adjustment is necessary. The Court will reduce the time Horwitz billed in this category to 3.5 hours.

Finally, as to category six, the Court concludes that AnnieMac is entitled to recover fees for the time counsel spent working on the present motion to recover attorneys' fees. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." (citation omitted)). However, on review, the Court agrees with Weikel that the combined 9.65 hours Maddin Hauser and Cole Schotz spent drafting this motion was excessive. [Dkt. 119] at 14.

First, AnnieMac spent almost half as much time preparing its fee motion as it did preparing its substantive motion to enforce. *Pretlow v. Cumberland Cnty. Bd. of Soc. Servs.*, Civ. No. 04-2885 (FLW), 2005 WL 3500028, at *6 (D.N.J. Dec. 20, 2005) (finding attorney's request for time spent on fee request "to be unreasonable and excessive" where, *inter alia*, the attorney "spent almost half the amount of time drafting a fee petition as he did preparing a moving and reply brief on the substantive issues in the case"). Moreover, there was no oral argument for this motion, and the fee motion itself is not particularly comprehensive. *See, e.g., Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 219 (D.N.J. 1999) (noting that time

28

spent preparing the fee petition "should be considered separately by the court, and may [ ] be reduced to reflect the partial success of the petition." (citation omitted)); *Freid v. Nat'l Action Fin. Servs., Inc.*, Civ. No. 10-2870 (ES), 2011 WL 6934845, at *8 (D.N.J. Dec. 29, 2011) (reducing fee award where "the fee petition [wa]s not particularly comprehensive and there was no oral argument," among other things). The Court, in its discretion, will therefore reduce Horwitz's preparation of the fee motion to five hours, but permit Mannion to recover the 0.35 hours he billed on the motion in full because the time appears reasonable and not duplicative.

*

Factoring in the foregoing adjustments, the Court calculates the lodestar in this case as follows:

| Legal Professional | Hours | Hourly Rate | Total |
|---|---|---|---|
| Robert M. Horwitz | 29.8 | $435.00 | $12,963.00 |
| Connor M. Mannion | 3 | $300.00 | $900.00 |
| Catherine J. Costagliola | 0 | N/A | $0 |
| Frances Pisano | 0.4 | $285.00 | $114 |
| Amy N. Figiel | 0.5 | $285.00 | $142.50 |
| | | | $14,119.50 |

Because Weikel does not argue for a downward adjustment of the lodestar, the Court will not make such an adjustment *sua sponte*. *Clyburn v. Gem Recovery Sys.*, Civ. No. 17-562 (SCM), 2017 WL 4570288, at *5 (D.N.J. Oct. 13, 2017) (citation omitted). Regardless, this case is not one of the "rare circumstances" where

departing from the lodestar is appropriate. *Souryavong*, 872 F.3d at 128 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543 (2010)).

These calculations do not include the time that AnnieMac spent in reviewing Weikel's opposition brief to the instant motion or preparing its reply. AnnieMac will therefore be given seven days from the date of this Order to supplement its request for fees. Weikel will have seven days from the date AnnieMac submits its supplemental request to file any objections.

### 2.    Costs

In addition to attorneys' fees, AnnieMac seeks to recover the $35.10 in costs it incurred in connection with its motion to enforce. [Dkt. 118-1] at 16. AnnieMac states that the $35.10 "represents the cost of ordering the transcript of the Settlement Conference on December 17, 2024," and provides an invoice regarding the same. [Dkt. 118-2] ¶ 12, Ex. A at 17. Weikel does not challenge AnnieMac's request to recover these costs, and the Court finds them reasonable and necessary. Thus, the Court will permit AnnieMac to recoup the $35.10 in full. *Apple Corps.*, 25 F. Supp. 2d at 497.

30

## IV.    CONCLUSION

For the reasons stated,

IT IS on this 19th day of February, 2026,

**ORDERED** that AnnieMac's motion for an award of attorneys' fees and costs, [Dkt. 118], is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the Court provisionally awards attorneys' fees and costs to AnnieMac in the amount of $14,154.60, subject to supplementation authorized below; and it is further

**ORDERED** that, on or before **February 26, 2026**, AnnieMac may supplement its fee application to include the time it spent reviewing Weikel's opposition brief to the instant motion and/or preparing its reply.  If AnnieMac files a supplemental fee application, Weikel may file any objections thereto no later than **March 5, 2026**.  If AnnieMac does not file a supplemental fee application, Weikel shall pay AnnieMac attorneys' fees and costs in the amount of $14,154.60 no later than **April 5, 2026**.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE